735 S.E.2d 259

**Ser James DAVIS, Prosecuting Attorney, Petitioner**

v.

**The Honorable Fred L. FOX, II, Judge and James Michael Sands, Respondents.**

No. 12–0603.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 2012.

Decided Nov. 8, 2012.

David F. Cross, Prosecuting Attorney's Office, Wellsburg, WV, for Petitioner.

Martin P. Sheehan, Sheehan & Nugent, Wheeling, WV, for Respondent, James Michael Sands.

McHUGH, Justice:

Through means of a writ of prohibition, James Davis, the Prosecuting Attorney of Hancock County (hereinafter "Petitioner"), seeks to prevent the enforcement of the April 19, 2012, order of the Honorable Fred L. Fox II, dismissing one count of felony murder from the indictment returned against James Michael Sands. In dismissing the felony murder count, the trial court took the position that a co-perpetrator, Mr. Sands, could not be found guilty of felony murder where the intended victim of a burglary was the person who caused the death of a co-perpetrator, Dakota Givens. Identifying this issue as one of first impression, the trial court looked to the position adopted by a majority of other states in concluding that the facts of this case did not fit the offense of felony murder. Upon our careful review of this issue, we agree with the circuit court's decision that the offense of felony murder does not encompass the death of a co-perpetrator caused by the intended victim of a burglary attempt. Having found no error in the circuit court's decision to dismiss the felony murder count, we find no basis for issuing a writ of prohibition.

## I. Factual and Procedural Background

On December 12, 2011, Mr. Sands, a high school senior, and Dakota Givens attempted to burglarize a convenience store located in Weirton, West Virginia. In the course of the attempted burglary, the owner of the store's son shot and killed Mr. Givens. Mr. Sands and Mr. Givens' girlfriend, Chelsea L. Metz, were arrested at the scene.[1] As a result of these events, Mr. Sands was indicted by a grand jury in the Circuit Court of Hancock

1. Ms. Metz was jointly charged with first degree murder with Mr. Sands in the indictment, but she was allowed to plead guilty to the misdemeanor offense of obstructing a police officer. She was sentenced to a $50 fine for that offense.

County on three charges: felony murder; attempted nighttime burglary; and conspiracy.

On February 24, 2102, Mr. Sands filed a motion to dismiss count I, felony murder, for failure to allege a crime. A hearing was held before Judge Fox on this motion on March 19, 2012. By order entered on April 19, 2012, the circuit court dismissed the felony murder count for failure to allege a crime.

## II. Standard of Review

 Our review of this matter is governed by the standard we first articulated in syllabus point four of *State ex. rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With this standard in mind, we proceed to determine whether the Petitioner has demonstrated sufficient grounds for the issuance of a writ of prohibition.

## III. Discussion

Petitioner seeks to persuade us that the offense of felony murder should apply to the facts of this case. To support his position, he focuses on the language of West Virginia Code § 61–2–1 (2010), our statute which categorizes by degree various types of murder. Pursuant to this statute, the following acts constitute first degree murder:

> Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four [§§ 60A–4–401 et seq.] chapter sixty-a of this code, is murder of the first degree. All other murder is murder of the second degree.

W.Va.Code § 61–2–1; *see* Syl. Pt. 6, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978) (recognizing that felony murder is one of three broad categories of first degree murder under W.Va.Code § 61–2–1).

From the clear and unambiguous language used in West Virginia Code § 62–2–1, Petitioner argues that felony murder is not limited to those situations where the murder victim was also the victim of the underlying felony. Petitioner contends that the statute, by its terms, permits an expansive interpretation that would extend the offense of felony murder to encompass every death which occurs during the commission of a statutorily-specified felony. *See id.* Acknowledging this position as the minority position, Petitioner urges us to adopt what he calls the "better view," by following those jurisdictions that consider all deaths which occur during the commission of the underlying felony as felony murder where the felony murder statute does not specify that a felony murder victim must also be a victim of the underlying felony. *See, e.g., State v. Jackson*, 287 Ga. 646, 697 S.E.2d 757, 767 (2010) (overturning dismissal of felony murder charges and remanding for determination of whether surviving co-felons were criminally responsible under proximate causation principles where intended victim killed co-felon); *Forney v. State*, 742 N.E.2d 934, 938 (Ind.2001) (recognizing that felony murder applies to death of co-perpetrator based on statutory language that defines the offense in terms of "contri-

but[ing] to the death of any person"); *People v. Klebanowski*, 221 Ill.2d 538, 304 Ill.Dec. 357, 852 N.E.2d 813, 823 (2006) (applying proximate causation theory of liability to convict co-felon of felon's death caused by robbery victim); *State v. Wright*, 379 So.2d 96 (Fla.1980) (recognizing that felony murder statute is not restricted to homicides of innocent victims during perpetration of felony).

■ Despite the categorization of murder offenses accomplished by West Virginia § 62–2–1,[2] the offense of murder remains undefined. *See State v. Abbott*, 8 W.Va. 741, 746–47 (1875); *accord* 9B Michie's *Jurisprudence*, Homicide § 9 at 16 (2005) (stating that "[w]hile the statutes distinguish the degrees of murder, they do not define murder itself"). As a result, common law is still required to identify what constitutes murder.[3] In the instance of felony murder, we held in syllabus point five of *State v. Mayle*, 178 W.Va. 26, 357 S.E.2d 219 (1987), that " '[t]he elements which the State is required to prove to obtain a conviction of felony murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt.' *State v. Williams*, [172] W.Va. [295], 305 S.E.2d 251 (1983)."

■ We explored the common law foundations of felony murder in *State v. Sims*, 162

W.Va. 212, 248 S.E.2d 834 (1978), observing that "[t]he felony-murder rule was a part of our substantive criminal law long before this State was formed." *Id.* at 228, 248 S.E.2d at 843. Explaining the common approach that West Virginia and Virginia have taken in construing their felony-murder laws, we recognized that "proof of the elements of malice, premeditation or specific intent to kill" is not required. *Id.* at 223, 248 S.E.2d at 841. In both states, "[i]t is deemed sufficient if the homicide occurs during the commission of, or the attempt to commit, one of the enumerated felonies." *Id.; accord Haskell v. Commonwealth*, 218 Va. 1033, 243 S.E.2d 477, 483 (1978).

As the circuit court recognized in its ruling, there is a majority and a minority position with regard to the issue presented by the facts of this case. Of those states that fall within the majority position—those who refuse to convict a perpetrator of felony murder when a co-felon is killed by the victim of the initial felony—our sister state adopted this view in *Wooden v. Commonwealth*, 222 Va. 758, 284 S.E.2d 811 (1981).[4] As the Virginia Supreme Court reasoned, while the "malice inherent in the robbery provides the malice prerequisite to a finding that the homicide was murder," when the robbery victim is the person pulling the trigger there is no malice underlying that act which can be imputed to the co-perpetrator. *Id.* at 814.

---

**2.** In syllabus point five of *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978), we held that "W.Va.Code, 61–2–1, was not designed primarily to define the substantive elements of the particular types of first degree murder, but rather was enacted to categorize the common law crimes of murder for the purpose of setting degrees of punishment."

**3.** *See* Syl. Pt. 4, *Sims*, 162 W.Va. 212, 248 S.E.2d 834 (holding that "W.Va.Code, 61–2–1, alters the scope of the common law felony-murder rule by confining its application to the crimes of arson, rape, robbery or burglary, or the attempt to commit such crimes"). The Legislature expanded the offenses that are subject to the felony-murder rule to include kidnapping, sexual assault, breaking and entering, escape from lawful custody, and the felony offense of manufacturing or delivering a controlled substance. *See id.*

**4.** For other decisions in which the majority position has been adopted, *see People v. Gonzalez*, 54

Cal.4th 643, 142 Cal.Rptr.3d 893, 278 P.3d 1242, 1252 (2012); *Watkins v. State*, 125 Md.App. 555, 726 A.2d 795, 801 (Md.1999); *Sheriff v. Hicks*, 89 Nev. 78, 506 P.2d 766, 768 (1973); *State v. Suit*, 129 N.J.Super. 336, 323 A.2d 541, 548–49 (1974) (rejecting state's argument that felony-murder statute applies to "any death which occurs without regard to the person whose action causes same":); *Jackson v. State*, 92 N.M. 461, 589 P.2d 1052, 1053 (1979); *State v. Bonner*, 330 N.C. 536, 411 S.E.2d 598, 601 (1992); *State v. Severs*, 759 S.W.2d 935, 938 (Tenn.Crim.App.1988) (recognizing that "theory of proximate cause in relation to felony-murder is limited to acts committed by the accused or his accomplices" and stating that any attempt to extend felony-murder rule "beyond its common law limitation to acts by the felon and his accomplice … is an appropriate action for the legislature … not the courts").

In the case often referred to as the leading decision for the majority position, *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958), the Pennsylvania Supreme Court reviewed the common law underpinnings of felony murder and, specifically, the imputation of malice. Citing to Blackstone's Commentaries, the Court explained: "[A]t common law an accidental or unintentional homicide committed in the perpetration of or attempt to perpetrate a felony is murder, the malice necessary to make the killing murder being constructively imputed by the malice incident to the perpetration of the initial felony." 137 A.2d at 475. In deciding whether a co-felon's death from police fire was imputable to the co-perpetrator, the Court pondered the following in *Redline:*

All felony-murder in Pennsylvania other than such as is committed in the perpetration of one of the common law felonies specified in our *degree* statute is murder of the second degree. . . . It is plain enough that neither the Act of 1794, supra, nor any of its subsequent re-enactments made *all* homicides occurring in the perpetration of felonies murder of the first degree. Logically, therefore, the basic determination of the fact of murder is to be made according to the rules of the common law, including the felony-murder theory of imputed malice. . . .

In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is *malice* and *not the act of killing.* The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine. "It is necessary * * * to show that the conduct causing death was done in furtherance of the design to commit the felony. Death must be a consequence of the felony * * * and not merely coincidence."

137 A.2d at 476 (citations omitted and emphasis in original).

In rejecting the application of the felony murder offense to the facts presented in *Redline*—one of the two robbers was shot and killed by a policeman during his attempt to escape the scene of the crime—the Court reasoned that the predicate for application of the felony murder rule was missing. Because the co-felon's death resulted from the policeman's lawful efforts to stop the robbers, the resulting death was deemed a justifiable homicide and not a murder. *Id.* at 483.

*People v. Washington*, 62 Cal.2d 777, 44 Cal.Rptr. 442, 402 P.2d 130 (1965), is a case frequently cited to illustrate the absurdity of invoking the felony-murder doctrine to situations where the co-perpetrators are not the trigger-pullers. In that decision, the court discussed the following hypothetical:

[T]wo men rob a grocery store and flee in opposite directions. The owner of the store follows one of the robbers and kills him. Neither robber may have fired a shot. Neither robber may have been armed with a deadly weapon. If the felony-murder doctrine applied, however, the surviving robber could be convicted of first degree murder even thought he was captured by a policeman and placed under arrest at the time his accomplice was killed.

*Id.*, 44 Cal.Rptr. 442, 402 P.2d at 134 (citations omitted). After acknowledging criticism of the felony murder rule,[5] the Court commented that the rule "should not be extended beyond any rational function that it is designed to serve." *Id.* Seeking to narrowly apply the rule, the Court held that "for a defendant to be guilty of murder under the felony-murder rule the act of killing must be committed by the defendant or by his accomplice acting in furtherance of their common design."[6] *Id.*

<hr>

5. It has been argued that the rule "erodes the relation between criminal liability and moral culpability" and "that in almost all cases in which it is applied it is unnecessary." *Washington*, 44 Cal.Rptr. 442, 402 P.2d at 134. *See also* Wayne R. LaFave, *Substantive Criminal Law* § 14.5(h) at pp. 472–73 (2nd ed.2003) (discussing criticisms of felony-murder doctrine and observing that such "criticisms have . . . resulted in the narrow-

ing of the felony-murder doctrine in various ways in many jurisdictions").

6. The Court's reasoning in *Washington* was the same as that used in *Wooden:* "When a killing is not committed by a robber or by his accomplice but by his victim, malice aforethought is not attributable to the robber, for the killing is not committed by him in the perpetration or attempt

In trying to predict how this Court would rule, the circuit court looked to our holding in syllabus point two of *State ex rel. Painter v. Zakaib*, 186 W.Va. 82, 411 S.E.2d 25 (1991), that "[a] person cannot be charged with felony-murder pursuant to W.Va.Code § 61–2–1 (1989) if the only death which occurred in the commission of the underlying felony was the suicide of a co-conspirator in the criminal enterprise." Based on its examination of our decision in *Painter*, the circuit court observed:

> It appears that the Court in *Zakaib* construed the statute in light of the conduct to which it applied. Otherwise, the Court could have easily concluded that the petitioner in *Zakaib* was criminally responsible for his co-conspirator's death as said death occurred during the criminal conspiracy ... In *Zakaib*, the petitioner's co-conspirator returned to the crime scene in a van to rescue another co-conspirator. When the rescue attempt was botched, the police pursued the van. After the police pulled over the van, the co-conspirator shot himself. Although this was a suicide, the Court had the opportunity to conclude that the killing was done in flight from the scene of the crime to prevent detection or promote escape, but it did not. Instead, the Court construed the statute in light of the facts. Otherwise, the petitioner's conduct in *Zakaib* would have supported a felony-murder charge under those facts as *W.Va.Code* § 61–2–1 does not specify the manner in which the death occurred.

Of additional interest to the circuit court was our language in *Zakaib* which stated that the petitioner "neither intended for the victim's death to occur, nor did he cause it, accidently or otherwise." 186 W.Va. at 84, 411 S.E.2d at 27.

Stressing the silence of West Virginia Code § 61–2–1 with regard to both the status of the victim and the status of the person who caused the death, Petitioner argues that Mr. Sands was properly charged with felony murder. His contention is essentially that the parameters of felony murder must be determined solely from the face of the statute. In light of this Court's previous rejection of an attempt to construe West Virginia Code § 61–2–1 in a strict facial manner, we find this argument to be without merit. In *Sims*, the appellant argued that the State had to first establish the elements of common law murder to prove felony murder based on the use of the term "murder" within the statute.[7] In rejecting this contention, Justice Miller eloquently explained:

> From a purely grammatical standpoint, it would have been better usage to begin the independent clause defining the crime of felony-murder with the term "homicide." However this may be, *we do not approach the question of what the statute means as if we were on a maiden voyage and were forced upon unchartered seas without compass or sextant.*

162 W.Va. at 227–28, 248 S.E.2d at 843 (emphasis supplied). We concluded that the statutory use of the term "murder" "as it relates to the crime of felony-murder, means nothing more than it did at common law—a homicide." *Id.* at 229, 248 S.E.2d at 844.

In a further attempt to find error, Petitioner faults the circuit court for stating that the third element of the statutory offense of felony murder is "the death of the victim as a result of injuries received." Petitioner contends that Judge Fox wrongly relied on our holding in *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983), which was later elevated to a syllabus point in *Mayle*, to identify the elements of felony murder.[8] *See* Syl. Pt. 5, *Mayle*, 178 W.Va. at 28, 357 S.E.2d at 221. Rather than the circuit court, it is Petitioner who is mistaken with regard to what is re-

---

to perpetrate robbery." 44 Cal.Rptr. 442, 402 P.2d at 133.

**7.** In syllabus point seven of *Sims*, we held: "The crime of felony-murder in this State does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies." 162 W.Va. at 213, 248 S.E.2d at 836.

**8.** Because each of our previous felony murder cases involved the death of the intended victim of the respective felonies, Petitioner seeks to posit that this Court has never been called upon to decide whether West Virginia Code § 62–2–1 would allow prosecution of felony murder against a co-perpetrator where the intended victim is the shooter and the co-felon the individual who is killed. Notwithstanding this factual distinction, Petitioner was wrong to state that "Judge Fox misstated the elements of Felony

quired to demonstrate felony murder in this state. *See id.*

As we noted in *Sims*, " '[i]n determining the meaning of a statute, it will be presumed, in the absence of words therein, specifically indicating the contrary, that the Legislature did not intend to innovate upon, unsettle, disregard, alter or violate (1) the common law....' " 162 W.Va. at 229 n. 11, 248 S.E.2d at 844 n. 11 (quoting *Coal & Coke Railway Co. v. Conley,* 67 W.Va. 129, 67 S.E. 613 (1910)). To date, the offense of felony murder, which has its origins in the common law of this state, has always involved the death of a victim of the felony or a police officer. *See State v. Wade,* 200 W.Va. 637, 490 S.E.2d 724 (1997); *Mayle,* 178 W.Va. at 28, 357 S.E.2d at 222, *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983); *State v. Dawson,* 129 W.Va. 279, 40 S.E.2d 306 (1946); *State v. Beale,* 104 W.Va. 617, 630, 141 S.E. 7, 12 (1927). Consequently, we flatly disagree with Petitioner's suggestion that our settled jurisprudence "offer[s] no insight on whether the Felony Murder statute requires proof of the death of the victim."

At common law, a conviction for felony murder predicated on the offense of robbery required a showing of a homicide committed by the defendant or by an accomplice in the attempt to commit or in the commission of a robbery. *See Sims,* 162 W.Va. at 223, 248 S.E.2d at 841; *Robertson v. Commonwealth,* 1 Va.Dec. 851, 856, 20 S.E. 362, 364 (1894). In examining whether a co-perpetrator's suicide could come within the felony murder statute in *Painter,* we remarked: "Instead, there was a suicide which was committed not by an *innocent bystander,* but by a co-conspirator in the criminal enterprise." *Painter,* 186 W.Va. at 84, 411 S.E.2d at 27 (em-

phasis supplied). The significance of that statement in *Painter* was the oblique reference to what was understood to be the case at common law—the death in a felony murder case was prototypically that of an innocent individual. Upon careful consideration of the issue presented, we are convinced that the statutory offense of felony murder remains deeply ensconced in its common-law foundations. And until such time as the Legislature sees fit to further amend West Virginia Code § 61–2–1,[9] we do not accept Petitioner's argument that the criminal offense of felony murder encompasses every death that occurs in the course of a statutorily-enumerated felony regardless of who causes the death. *See* Wayne R. LaFave, *Substantive Criminal Law* § 14.5(d) at pp. 456–58 (2nd ed.2003) (stating that "it is now generally accepted that there is no felony-murder liability when one of the felons is shot and killed by the victim, a police officer or a bystander") (footnotes omitted).

Accordingly, we hold that when a co-perpetrator is killed by the intended victim of a burglary during the commission of a crime, the surviving co-perpetrator cannot be charged with felony murder pursuant to West Virginia Code § 61–2–1. Having found that the Petitioner failed to demonstrate that the circuit court was clearly erroneous with regard to its dismissal of the felony murder count of the indictment returned against Mr. Sands, we find no basis for issuing the writ of prohibition sought through this proceeding and, accordingly, deny the request.

Writ denied.

Murder" by including " 'the death of the victim as a result of injuries received' " as the third element. Whether Petitioner approves or not, this is a correct statement of our law. *See* Syl. Pt. 5, *Mayle,* 178 W.Va. at 28, 357 S.E.2d at 221.

9. Oklahoma has a felony murder statute that was broadly drafted to cover situations such as presented by the facts of this case in that first degree murder occurs "when that person *or any other person* takes the life of a human being during, or if the death of a human being results from, the commission or attempted commission of ... robbery with a dangerous weapon...." *Dickens v.*

*State,* 106 P.3d 599, 600 (Okla.Crim.App.2005) (quoting Title 21 O.S.2001, § 701.7(B) and emphasis supplied). But Alaska, Colorado, Connecticut, New Jersey, New York, Oregon, Utah, and Washington have amended their statutes to limit the offense of felony murder to the killing of an individual who is not a participant in the underlying felony. *See* LaFave, *supra,* § 14.5(d) at p. 457 and n. 69; *see, e.g.,* Alaska Stat. § 11.41.110 (2010) (restricting felony murder to "death of a person other than one of the participants").