# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Jaymason M. Robinson,
Petitioner Below, Petitioner

**FILED**

**January 14, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs.)  No. 17-1029 (Wood County 14-P-59)

Russell Maston, Superintendent,
Parkersburg Correctional Center and Jail,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner Jaymason M. Robinson, by counsel D. Shane McCullough, appeals the Circuit Court of Wood County's November 9, 2017, order denying his petition for a writ of habeas corpus following his conviction by a jury of two counts of voluntary manslaughter and two counts of concealment of a deceased human body. Russell Maston, Superintendent, Parkersburg Correctional Center and Jail, by counsel Robert L. Hogan, filed a response in support of the circuit court's order.[1] On appeal, petitioner argues that the circuit court erred in denying him habeas relief because he received ineffective assistance of counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following the shooting deaths of Lester Wratchford and Eric Sprouse, petitioner was charged with two counts of first-degree murder and two counts of concealment of a deceased human body. Following a jury trial in March of 2011, petitioner was convicted of both counts of concealment of a deceased human body and two counts of voluntary manslaughter, a lesser-included offense of first-degree murder. According to the evidence at trial, the victims and another individual, James Denton, entered unannounced into a house where multiple individuals, including petitioner, lived. Once inside, the victims entered petitioner's bedroom while Mr. Denton remained in the kitchen. According to his trial testimony, while in the kitchen, Mr.

---

[1]Effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3. Further, petitioner originally listed Marvin Plumley as respondent in this matter. However, petitioner has subsequently been transferred from Huttonsville Correctional Center, and the appropriate public officer has been substituted in accordance with Rule 41 of the Rules of Appellate Procedure.

1

Denton saw petitioner holding a gun in his bedroom and heard one of the victims say "[if] you kill him, you're going to have to kill me." Petitioner then shot and killed the victims. According to the State, the three individuals came to petitioner's residence to borrow camping equipment. However, petitioner's theory at trial was that the three men came to rob him of drugs and/or money, as these individuals knew petitioner to be a drug dealer. After the shooting, petitioner and an accomplice removed the victims' bodies from the home and hid them at another location. A few days later, Brooke Crawford, one of the victim's girlfriends, called the police about the incident, although she provided only "minimal information." The following day, petitioner's accomplice reported to the police his involvement in hiding the bodies, which were discovered with his direction.

During petitioner's trial, the State presented Mr. Denton's testimony. According to the witness, he and the victims went to petitioner's home to borrow camping equipment for an upcoming music festival. Mr. Denton also testified to witnessing petitioner shoot and kill the victims. On cross-examination, petitioner's counsel was able to get Mr. Denton to admit to certain facts intended to undermine his credibility, including the following: (1) he withheld certain facts from police during his initial statement; (2) he gave a prior statement to law enforcement that indicated he was in the living room at the time of the shooting and did not suggest that he witnessed the incident, unlike his trial testimony; (3) he asserted that the victims went to petitioner's residence to buy drugs in his statement to police; and, (4) he was intoxicated during the incident.

In support of his theory that the victims came to his home to rob him, petitioner testified that about two weeks prior to the incident, Ms. Crawford called him and asked him to sell drugs to her and one of the victims, although petitioner refused. According to petitioner's testimony, when the victims came to his home they asked him to provide them with drugs, which he claimed he could not do because he did not have any. Petitioner testified that the victims then entered his bedroom and began searching it and that one of the victims threatened him in an attempt to obtain drugs. According to petitioner, when one of the victims overturned his mattress and revealed a gun, the victim reached for it but petitioner grabbed it first. Petitioner testified that the victims then attempted to get the gun from him and that he shot them in the ensuing struggle.

Petitioner called Ms. Crawford, who testified that the victims had not liked petitioner. Petitioner also called John Studenic, a man who was a friend of one of the victims and who, a few days before the shooting, overheard one of the victims making plans to rob a house on Pike Street, where petitioner lived. Petitioner also called Chris Grinter, an acquaintance of both petitioner and the victims. Mr. Grinter testified that about a week prior to the shooting he heard one of the victims planning to rob petitioner. Ultimately, the jury convicted petitioner of two counts of voluntary manslaughter, lesser-included offenses of first-degree murder, and two counts of concealment of a deceased human body.

In February of 2012, the circuit court resentenced petitioner to a term of fifteen years of imprisonment for each of his voluntary manslaughter convictions and a term of one to five years of incarceration for each of his convictions of concealment of a deceased human body, said sentences to be served consecutively. Thereafter, petitioner appealed his conviction to this Court, which unanimously affirmed the same by memorandum decision in June of 2013. *See State v.*

2

*Robinson*, No. 12-0368, 2013 WL 3185070 (W.Va. June 24, 2013) (memorandum decision).

Following the appointment of counsel and the filing of a petition for writ of habeas corpus alleging ineffective assistance of counsel, the circuit court held an omnibus evidentiary hearing in June of 2017, during which petitioner and his trial counsel testified. According to the circuit court's ultimate findings, petitioner's theory of the case and evidence presented at trial supported his claim of self-defense, tended to impeach the State's witnesses, and cast the victims in a more negative light, generally diminishing his chances of being convicted of first-degree murder. However, the circuit court also noted that petitioner's defense carried implicit risks that "the jury would view him negatively, that testifying in his own defense would be necessary and that a jury would evaluate his credibility more negatively." Evidence further established that petitioner and his trial counsel discussed the theory of defense and strategy on several occasions and over a period of months with petitioner agreeing to the defense with an awareness of the risks. Ultimately, the circuit court denied petitioner habeas relief.[2] This appeal followed.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009). Further,

> "[i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

Syl. Pt. 2, *Raines v. Ballard*, 236 W.Va. 588, 782 S.E.2d 775 (2016). Importantly, hindsight is not to be applied to the objective standard:

> "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified

---

[2]The circuit court entered its original order denying habeas relief in September of 2017. Thereafter, petitioner filed a motion for reconsideration, citing Rule 35 of the West Virginia Rules of Criminal Procedure. In an order entered on November 9, 2017, the circuit court denied this motion and ruled that "[i]n order to provide petitioner an opportunity to appeal the [c]ourt's denial of his Petition for Post-Conviction Relief the [c]ourt hereby re-issues its Findings, Conclusions and Order." It is from the November 9, 2017, order that petitioner appeals.

3

acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

*Raines*, 236 W.Va. at 589, 782 S.E.2d at 776, Syl. Pt. 3.

In his first argument on appeal, petitioner alleges that he received ineffective assistance of counsel because of the strategic decision to refer to him as an "outlaw" and "drug dealer." According to petitioner, this opened the door to character evidence that likely would have been precluded under Rules 403[3] and 404[4] of the West Virginia Rules of Evidence. Petitioner also alleges that it was error to call him as a witness to testify to his involvement in drug culture and his prior arrests. According to petitioner, although he voluntarily chose to testify, he was left with no choice but to testify given counsel's trial strategy. According to petitioner, these decisions resulted in permitting the State to argue that he was a criminal by nature and, therefore, more willing to kill, which was highly prejudicial. We do not agree.

The record clearly shows that counsel's trial strategy to address petitioner's involvement in drug activity, to which petitioner agreed, was instrumental in advancing a theory of self-defense at trial. Further, counsel's decision to engage in this strategy is the exact type of strategic decision that this Court has routinely refused to rely on as a basis for a claim of ineffective assistance. *See, e.g., Coleman v. Painter*, 215 W.Va. 592, 596, 600 S.E.2d 304, 308, (2004) (finding that, contrary to defendant's request that counsel pursue a theory that a sexual abuse victim had a history of making false allegations, the "decision not to develop a trial theory of false allegations by the victim was a reasonable tactical decision"); *State v. Miller*, 194 W.Va. 3, 16, 459 S.E.2d 114, 127 (1995) ("[A] reasonable lawyer certainly could have made a tactical choice not to pursue the affirmative defense of self-defense."). While it is true, as the habeas court found, that the strategy at issue involved risks, petitioner has failed to demonstrate that no reasonably qualified defense attorney would have presented the defense theory in this way. In fact, petitioner fails to recognize that this theory was likely responsible for his conviction of the

---

[3]Rule 403 states as follows: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[4]Rule 404(a) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." However, that rule also provides that "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]" *Id.* Further, Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

4

lesser-included offense of voluntary manslaughter instead of a conviction for first-degree murder.

Through petitioner's testimony, counsel was able to advance the theory that the victims came to his home to rob him and that petitioner shot them in self-defense during the commission of that robbery, a theory that lacked an evidentiary basis without directly addressing petitioner's status as a drug dealer. On appeal, petitioner argues that counsel could have advanced the theory of self-defense without revealing he was a drug dealer. Specifically, petitioner argues that counsel could have refuted the State's theory that the victims went to his home to obtain camping equipment by arguing that he does not own camping equipment. He further argues that counsel could have relied on the fact that he and the victims previously had a falling out over petitioner's past relationships with each of the victims' paramours. According to petitioner, using these facts to support the theory of self-defense would not have opened the door to prejudicial character evidence. We find, however, that petitioner's alternate defense theory fails to comport with his overall defense strategy, including the fact that it does not support his hesitancy in contacting the police after the shooting and his subsequent criminal concealment of the victim's bodies because of his engagement in related criminal activity. Further, merely acknowledging another potential defense theory is insufficient to show that counsel's strategy was unreasonable. This Court has held that "[t]he strong presumption that counsel's actions were the result of sound trial strategy . . . can be rebutted only by clear record evidence that the strategy adopted by counsel was unreasonable." *Coleman*, 215 W.Va. at 596, 600 S.E.2d at 308 (quoting *State v. LaRock*, 196 W.Va. 294, 309, 470 S.E.2d 613, 628 (1996) (citation omitted)). Petitioner has failed to show that counsel's strategy was unreasonable. As such, we find that he is entitled to no relief.

Next, petitioner argues that conflicting evidence was presented to the habeas court regarding counsel explaining the lesser-included penalties to him. Petitioner acknowledges that counsel testified that he would have reviewed the potential penalties for the indictment, along with any lesser-included offenses, with petitioner several times. However, petitioner argues that he testified that counsel never fully reviewed the penalties for lesser-included offenses, which resulted in his confusion over the possible penalties for voluntary manslaughter. Upon our review, however, we find that petitioner is entitled to no relief in this regard. As petitioner acknowledges, the habeas court heard testimony from trial counsel that contradicted his own testimony on this issue. As such, this was clearly an issue of credibility that was for the habeas court to resolve. *See State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) (citing *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967)) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). For these reasons, we find that petitioner is entitled to no relief.

Next, petitioner argues that trial counsel was ineffective in his cross-examination of two State witnesses, James Denton and Brooke Crawford. According to petitioner, counsel failed to properly attack these witnesses' credibility by establishing a theory that the witnesses received a benefit by testifying for the State, which ultimately prejudiced him. We do not agree, given that this Court has previously held that "[t]he method and scope of cross-examination 'is a paradigm of the type of tactical decision that [ordinarily] cannot be challenged as evidence of ineffective assistance of counsel.'" *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 328, 465 S.E.2d 416, 430 (1995) (quoting *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir. 1983)).

Importantly, petitioner admits that counsel undertook a lengthy cross-examination of Mr. Denton in an attempt to undermine his credibility. Indeed, the record is clear that counsel specifically got Mr. Denton to admit that he had not initially been entirely truthful with law enforcement and was intoxicated during the shooting. Counsel further undermined the witness's testimony by establishing that he previously contradicted his claimed location in the home during the time of the shooting. However, petitioner argues that counsel only asked two questions of Mr. Denton related to his attempt to "keep himself out of trouble" and distance himself from any potential legal issues arising from the incident for which petitioner was indicted and failed to question Mr. Denton as to his attempts to distance himself as an accessory to the victims' crimes. On appeal, petitioner argues that Mr. Denton could have potentially been charged with felony murder for his role in the incident at issue, and that counsel's failure to address this as a motivation for the witness's testimony constitutes ineffective assistance. However, petitioner fails to recognize that this Court has held that "[w]hen a co-perpetrator is killed by the intended victim of a burglary during the commission of a crime, the surviving co-perpetrator cannot be charged with felony murder. . . ." Syl. Pt. 4, *Davis v. Fox*, 229 W.Va. 662, 735 S.E.2d 259 (2012). Moreover, the record shows that counsel questioned Mr. Denton as to his motivation in making his statement to police and testifying at trial in an effort to avoid his own prosecution. As such, we find that counsel's performance concerning Mr. Denton's cross-examination was sufficient and petitioner is entitled to no relief.

With respect to Ms. Crawford, petitioner argues that counsel never attempted to attack her credibility by eliciting testimony that she had a history of working as a confidential informant for law enforcement. However, at the omnibus hearing, counsel testified that he did not attack this witness's credibility because he intended to call Ms. Crawford as a witness during petitioner's case-in-chief to elicit other information that was favorable to petitioner. Indeed, the record shows that counsel engaged in a brief cross-examination of the witness during the State's case-in-chief. However, during petitioner's case-in-chief, Ms. Crawford provided testimony that the victims did not like petitioner. Simply put, counsel's explanation that he would not have attacked Ms. Crawford's credibility during the initial cross-examination because of his intention to later call her as a witness is not an unreasonable trial strategy and does not establish that counsel was ineffective. As such, petitioner is entitled to no relief.

Next, petitioner argues that counsel was ineffective for failing to subpoena a key defense witness, Tylon Carr. According to petitioner, he believed that Mr. Carr's testimony would have helped his defense because the witness could have supported the fact that the victims entered his home to rob him. We find, however, that petitioner is entitled to no relief, as this Court has held that "what witnesses to call . . . is the epitome of a strategic decision." *Miller*, 194 W.Va. at 16, 459 S.E.2d at 127. This Court has also held that "so long as the failure to call a witness is not 'due to dereliction on the part of counsel, there is no ineffective assistance.'" *Flack v. Ballard*, 239 W.Va. 566, 577, 803 S.E.2d 536, 547 (2017) (quoting *Daniel*, 195 W.Va. at 329, 465 S.E.2d at 431). According to petitioner, counsel refused to subpoena Mr. Carr, who was incarcerated out of state, because it would be too difficult. The record, however, does not support this assertion. At the omnibus hearing, counsel testified that he presented several witnesses in petitioner's case-in-chief and petitioner was involved in the decision-making process for the entire case. Further, counsel indicated that any information Mr. Carr would have been able to provide was established

6

by other witnesses called by either the defense or the State. Importantly, counsel also testified that he was aware of the procedure for subpoenaing an out-of-state witness that is incarcerated if necessary to secure testimony at trial and that he did not recall refusing to subpoena any witnesses in this case. On the contrary, although petitioner testified that he believed Mr. Carr would have testified to different aspects of hearing the victims planning to rob him, he offered nothing concrete about what such testimony would have been. Based on the foregoing, petitioner cannot establish ineffective assistance for counsel's failure to subpoena a witness whose testimony was clearly duplicative of testimony from at least two other witnesses. As such, we find that he is entitled to no relief in this regard.

Finally, petitioner argues that counsel's cumulative mistakes can be considered when determining whether he received effective representation. *Daniel*, 195 W.Va. at 322 n.7, 465 S.E.2d at 424 n.7. According to petitioner, counsel's performance was so deficient that the cumulative effect of all his mistakes resulted in the denial of a fair trial. Further, in the absence of these cumulative mistakes, petitioner believes that the result at trial would have been different. We find, however, that because petitioner has failed to identify any error in his trial, he is not entitled to relief on the basis of cumulative error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 14, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
John A. Hutchison