**THE PEOPLE, Plaintiff**

v.

**ALEXANDER CHARLES, Defendant**

May Term, 1929

No. 62

District Court of the Virgin Islands

Frederiksted Sub-Judicial District
St. Croix

May 16, 1929

WILLIAMS, *Judge*

By an information filed on the 28th day of February, 1929, one Alexander Charles is charged with manslaughter, in that, as it is charged, he did "on or about the 24th day of February, 1929, A.D. in the District of Frederiksted, and within the jurisdiction of this court, unlawfully and feloniously inflict an injury upon the person of one Rosa Williams, a human being, thereby causing the death of said Rosa Williams, contrary to the form, force and effect of the law in such cases made and provided and against the Peace and Dignity of the People of this District."

The said Alexander Charles demurred to the information, on the ground "that the information does not substantially conform to (1921 Code) Title V, chapter 5, section 10 (5 V.I.C. § 3501 note), in that it does not state circumstances with sufficient certainty to constitute a public offense." Said section 10 reads as follows:

"The information must be direct and certain as regards (1) the party charged; (2) the offense charged; (3) the particular circumstances of the offense charged when they are necessary to constitute a complete offense."

Now, does the above information comply with the requirements of that section? I have concluded that, though meagre as it is, it does comply with the requirements of that section. Passing on down that chapter from section 10, section 18 (5 V.I.C. § 3501 note) starts off by saying that "The information is sufficient if it can be understood therefrom:" and concludes with subsection 6 and subsection 7 as follows:

"(6) That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.

"(7) That the act or omission charged as the crime is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction to the right and justice of the case."

Another subsection of chapter 5, namely subsection 2 of section 6, has application here, although not referred to by the defendant's attorney, and requires the information to contain:

"A statement of the facts constituting the offense in ordinary concise language, without repetition, as to enable a person of common understanding to know what is intended."

These seem to be the only sections of the Code materially affecting or concerning the requirements of the information. The definition of manslaughter given by the Code is merely declaratory of the common law, and is found in section 4 of chapter 5, Title 4 (IV), of the Code (1921; 14 V.I.C. § 924), and is as follows:

"Manslaughter is the unlawful killing of a human being without malice aforethought. It is of two kinds:

"(1) Voluntary; upon a sudden quarrel or heat of passion.

"(2) Involuntary; in the commission of an unlawful act, not amounting to a felony; or in the culpable omission of some legal

duty; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection."

■ Notwithstanding the requirements of said sections 6 and 10, chapter 5 of Title V, of the Code, declares, in section 18 (supra), that the information shall be sufficient if the act or omission charged is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended.

■ The latest case dealing with this subject that has come to my hand, is that of Neusbaum v. State (Ct. App. 1928) 156 Md. 149, 143 Atl. 872. In that case the court examined a number of authorities and elaborately discussed the question here involved. The indictment in that case reads as follows: "The Grand Jury of the State of Maryland do on their oath present that Jeremiah James (?) on the 7th day of December, in the year of our Lord 1927, at the city aforesaid, feloniously and negligently kill and slay W.P.(?), contrary to the form of the act of Assembly in such case made and provided and the peace and dignity of the State."

From an examination of the information in this case it will be seen that they are identical in legal effect. The words mean exactly the same thing, and, therefore, unless the principles of positive law are different in the two jurisdictions that case would be persuasive, although not controlling, here. I will not quote at length therefrom, but content myself by referring to it. The court — after a thorough analysis, as above stated, was made — decided that the indictment was sufficient and therefore overruled the demurrer, and required him to plead thereto. Certainly the information is direct and certain as to (1) the party charged; (2) as to the offense charged. See section 10, chapter 5, Title V (1921 Code, supra). I do not think that subsection

3 of that section is applicable here. It is not necessary that "the particular circumstances of the offense charged be set out" as the particular circumstances are not "necessary to constitute a complete offense." I apprehend that a complete offense of manslaughter would be stated by paraphrasing the words of said section 4 (chapter 5, Title IV [1921 Code, supra]), to wit, "Manslaughter is the unlawful killing of a human being without malice aforethought." By reciting that the killing was felonious and not reciting that malice aforethought existed no offense above manslaughter could be found thereunder, and a conviction of no offense above manslaughter could be had, therefore, upon the information as received. The charge is "manslaughter"; the offense is the killing of a human being feloniously, and the act in the case is the killing. In Webster's New International Dictionary "act" is defined as a "process of doing"; "action"; "to perform actions"; "to exert power; to produce an effect". "Omission" is defined as "act of omitting; state of being omitted; neglect or failure to de something."

The act in this case is killing; the means was an automobile, or the like; the manner was the reckless, unlawful, or what not, driving of the automobile. The act has been alleged, but the means and manner have been omitted, as being matters of evidence. Their alleging is not necessary to complete the offense charged. The "offense charged" is completely stated, and may be understood by an ordinary person as well as if a lot of redundancy and autology were indulged in. Prolixity does not always make for clarity, but, in fact, it many times, befuddles the person and obscures the issue. This is not an age of illiteracy, but of general dissemination of learning, and, therefore, what would not be clear to an ordinary person in the 17th century may well be quite clear to a 20th century person. The ordinary person of today, I apprehend, would have no difficulty in

learning and knowing what was intended by the information filed against him.

■ Many times the manner or means by which an act is committed is confused with the words "offense charged". The offense may be charged without giving the manner or means whereby the offense was committed, and, generally, the manner or means by which the offense was committed are not necessary unless they become necessary to constitute a complete offense; in other words, if a complete offense is stated though the manner or means is left out, the information would be sufficient. Turning to 31 Corpus Juris 694, section 239, we find the general principle to be, that — "The particular manner or means employed in the perpetration of the offense generally need not be averred. But if it is the manner in which, or the means by which, the act is done that imposes criminality, or if such allegation is necessary in order that it may be seen which of two or more distinct offenses is charged, they must be alleged."

In the case of Doe v. United States, 253 Fed. 904, the Circuit Court of Appeals, speaking through Circuit Judge Carland, said: "Counsel for defendant urges that the count above quoted is bad, because it does not allege facts showing how or in what way the act of the defendant would obstruct the recruiting and enlistment service of the United States, and does not give the names of the particular persons who were affected by the conduct of the defendant. The offense charged is purely statutory, and the words of the statute contain all the ingredients of the offense. The count under consideration charges the offense in the language of the statute, and this is sufficient. Potter v. United States, 155 U. S. 438, 39 L. Ed. 214; United States v. Gooding, [12 Wheat. 460,] 6 L. Ed. 693; United States v. Britton, 107 U. S. 655, 27 L. Ed. 520; Burton v. United States, 202 U. S. 344, 50 L. Ed. 1057.

" 'The means of effecting the criminal intent, or the

206

circumstances evincive of the design with which the act was done, are considered to be matters of evidence to go to the jury to demonstrate the intent, and not necessary to be incorporated in an indictment.' Wharton's Criminal Law, Sec. 292; Evans v. United States, 153 U.S. 584, 38 L. Ed. 830; May v. United States, 199 Fed. 42.

"We think the count in question clearly apprised the defendant of what he must be prepared to meet, and showed with accuracy to what extent he might plead a former acquittal or conviction. Cochran v. United States, 157 U.S. 286, 39 L. Ed. 704."

In United States v. Brewers' Association, 239 Fed. 170, Judge Thomson, in sustaining the indictment, said: "The indictment is sufficient if it advise the defendants of the nature and cause of the accusations, against them, with such particularity as to enable them to prepare the defense. The elements which constitute the crime are facts which must be fully and clearly set out. But matters in the nature of evidence need not be alleged, nor the means by which the crime was to be accomplished, unless the act is one which may or may not be criminal according to the circumstances under which it is done. Mark Yick Hee v. U. S., 223 Fed. 732."

From a reading of the information in this case Alexander Charles will have no difficulty in coming to the conclusion that he is to make a defense against the unlawful killing of Rosaline Williams, on or about the 24th day of February, 1929, in the Sub-Judicial District of Frederiksted. Unless the manner and means of the killing are to be set forth there is nothing that could be said which would enable him to more clearly know that he is charged with the killing of Rosaline Williams, contrary to law. If he did not actually kill Rosaline Williams, in any manner or by any means whatsoever, he certainly ought to be in a way to defend against the charge. He knows whether or not he killed

Rosaline Williams, and the manner or means being stated would not help him in the least.

There is a strong tendency away from the strictness and rigidity of common law pleadings. Recently Mr. Justice William Renwick Riddle analyzed the indictment in the Sacco-Vanzetti case, tried in Massachusetts a comparatively short time ago. The indictment was as concise as the one in Maryland and the one in hand. He said he considered it absolutely sufficient. Formerly cases were fought more on technicalities than they were on the merits. The merits of the case seemed to be almost secondary consideration, so much attention being paid to the technical features of the pleadings. The reason for that scrutiny has long since passed. If such conditions were to revive I have no doubt that the tendency would be again back to strictness. It has been said that "the legal mind of the 16th and 17th century, together with more worthy accomplishments, was master of the art of making two words grow where only one had ever been seen before." The ancient theory was that every essential element of the crime should be alleged directly and positively, and permitted no omission to be cured or added by inference or intendment. The result of this strictness was that many guilty defendants escaped on the most subtle distinctions. When we read those decisions, and see two words growing where only one ever was seen before, we are apt to say, with Mr. Bumble, "the law is an ass, an idiot", but, when we further reflect, we will come to the conclusion that those decisions had their origin in the well springs of the human heart. It will be recalled that Blackstone commented that in his time there were one hundred and sixty capital offenses. 4 Black, 18. In addition to this seeming harshness the procedure was hardly less arresting in its apparent barbarousness. On the conviction of many offenses the person would be attainted and his property taken from him and his family. In many instances

there would be refusal to plead, if it is thought that guilty would be the result. At that time there was no system of any plea of not guilty in such cases. The practice was then to pass judgment that the defendant suffer peine forte et dure, by which he was either starved or crushed to death, if he persisted in refusing to plead. Furthermore, there was a time when the defendant was not given, or even permitted to see, a copy of the indictment. He was compelled to rely upon his recollection of the hearing of it read. 1 Chitty Crim. Law 403. In this state of facts and law, it was to be expected that human feelings of the judges would be stronger than the law, in cases where it was obvious that the penalty to be exacted upon a plea or proof of guilty would be entirely in excess of the offense. This has been given as a reason for the apparently ridiculous scrutiny given to indictments in the olden days. As the reason has now long since become nonexistent, the administrators of the law have relaxed that strict scrutiny considerably. The legislative departments of many jurisdictions have given, expressly, such a short form as is found in this information. This form, I understand, has been taken from the Puerto Rican Code, our neighbor sixty miles to the west. The object of trial today is not to match wits and to display great powers of analysis and erudition, but to dispose of the matter on its merits. Therefore, technicalities are not looked upon with any great degree of favor.

For the above reasons I have concluded that the information, though meagre or at least concise, is sufficient.

■ Now, however, if the defendant wishes some more particulars, even though the information is sufficient, he may request a bill of particulars. It is true that, so far as I have been able to discover at the moment, there is nothing in our code (1921) about the allowance of bills of particulars. I do not conceive that omission to be decisive of the matter, however. In 31 Corpus Juris 750, section 308, it

is said: "In some states the practice of allowing bills of particulars in criminal cases is not recognized. But in others, it is held that the law of bills of particulars applies to criminal, as well as civil cases, and that a court may order a bill of particulars by virtue of its general authority to regulate trials, in furtherance of justice, in order to give defendant fair notice of what he is called upon to defend. So it is held that, where the charges of a valid indictment are nevertheless so general in their nature that they do not fully advise accused of the specific acts with which he is charged, so that he may properly prepare his defense, the court has power to order a bill of particulars to be furnished him . . . . ". In Pine v. Com. 121 Va. 812, 93 S.E. 652, it was held, that "While the statute confers the right to demand a bill of particulars in any action, it does not apply to criminal prosecutions, but the right is inherent in the trial court." And in People v. Moskowitz, 196 N.Y. Supp. 634, it was held, that "Notwithstanding the absence from the code of criminal procedure of any specific provision for bills of particulars, the common law power of the courts in respect to granting such bills has not been changed or altered."

Mr. Justice Van Devanter, now a member of the Supreme Court of the United States, in Rinker v. United States, 151 Fed. 755, 759, speaking for the Circuit Court of Appeals, said: "When an indictment sets forth the facts constituting the essential elements of the offense with such certainty that it cannot be pronounced ill upon motion to quash or demurrer, and yet is couched in such language that the accused is liable to be suprised by the production of evidence for which he is unprepared, he should, in advance of the trial, apply for a bill of the particulars; otherwise it may properly be assumed as against him that he is fully informed of the precise case which he must meet upon the trial. 1 Bishop's New Cr. Proc. Sec. 643 et seq; Wharton, Cr. Pl.

& Pr. (9th Ed.) Sec. 702 et seq.; Dunbar v. United States, 156 U.S. 185, 192, 39 L. Ed. 390; Rosen v. United States, 161 U.S. 29, 40 L. Ed. 606; Durland v. United States, 161 U.S. 306, 40 L. Ed. 709; Dunlop v. United States, 165 U.S. 486, 41 L. Ed. 799; United States v. Bennett, 24 Fed. Cas. 1,093, No. 14,571; Tubbs v. United States, 105 Fed. 59."

Therefore, I conclude that this court has power to grant a bill of particulars in a proper case. We are entitled to go back to the common law in such matters. It was done in New York, a code state, from which a large part of this code (1921) was actually, though indirectly, taken. If it could be done in New York there is no reason why it should not be done here, and I conclude rightly done here.

Therefore, as the court said in State v. Grossmann, 95 N. J. L. 497, 498, 112 Atl. 892 — "If a defendant wants a more specific description of the location or seat of the offence he is at liberty to demand a bill of particulars."

It is easy to understand that, in some cases, there might be a desire to get sufficient facts from which to determine the degree of the offense. The law does not seem to require that the degree be charged. The information must be direct and certain as regards "the offense charged." The offense in this case is obviously manslaughter. Manslaughter is of two degrees, or is of two kinds, to use the words of the ordinance. Even though the information is, generally speaking, to charge an offense, it might be, as above stated, desirable, in some cases, to try to work out more definitely the particular degree of the offense. A bill of particulars would supply such a want.

While I have upheld the information I do not consider it good practice to cut as close to the corners as this one does. Therefore, I do not approve of the practice of using such meagre informations; neither, however, would I approve of prolixity. There is a happy mean between these two that ought to be approached as near as possible.

Of course, the matter of the degree of the offense would be taken care of in the charge to the jury, if the case were to actually go to trial on the merits, that is to say, even if the charge amounted to a charge of manslaughter in the first degree, if the facts did not justify it, the instructions to the jury would confine the jury's verdict to second degree as was done in this case. Therefore, the party could suffer no wrong by reason of the general charge of manslaughter.

With this safeguard, namely, the right to demand a bill of particulars, no possible harm can come to the defendant by the use of concise pleadings. Hence the demurrer should be overruled, as above stated.

Demurrer overruled.