**COLLY CASCEN, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2012-0007

Supreme Court of the Virgin Islands

January 8, 2014

JOMO MEADE, ESQ., Law Offices of Jomo Meade, St. Croix, USVI, *Attorney for Appellant.*

KIMBERLY L. SALISBURY, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

**OPINION OF THE COURT**

(January 8, 2014)

CABRET, *Associate Justice.* Colly Cascen appeals his convictions in the Superior Court for first-degree murder, attempted first-degree murder, third-degree assault, reckless endangerment, and unauthorized possession of a firearm during the commission of a crime of violence. For the reasons

that follow, we reverse Cascen's convictions for third-degree assault and unauthorized possession of a firearm during the commission of a crime of violence, but affirm the remaining convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2008, Christian Soto, III, a sixteen-year-old horse jockey, won his first race and went to celebrate his win with his father, Christian "Dooly" Soto, Jr.,[1] and others outside of the Harvey Housing Community in Estate Bethlehem on St. Croix. After they arrived at the housing community, Cyril Peters joined them in a white Nissan Altima driven by his girlfriend, Yessenia Knowles. A minor identified in court documents as W.J. also arrived to congratulate Soto. Soon after, at around 10:48 p.m., a black car stopped in the street in front of the gathering, and an assailant — later identified as Colly Cascen — exited the car and began to fire toward the gathering with a chrome gun in his left hand, allegedly intending to kill Peters. After the first shots were fired, Peters got out of the Nissan and began to run from the scene with Cascen shooting after him. About fifteen shots were fired. During the shooting, Soto was shot once in the forehead, Peters was shot several times, and W.J. was grazed by a bullet as he ran from the scene. After Cascen fled the scene, Knowles drove Soto, Dooly, and Peters to the hospital. There, Soto died; Peters survived.

On October 1, 2008, the People charged Cascen with first-degree murder, attempted first-degree murder, first-degree assault, reckless endangerment, and unauthorized possession of a firearm during the commission of a crime of violence.[2] The six-day trial began on March 8, 2010, during which the People called W.J., Dooly, Knowles, Detective Dino Herbert, Detective Karen Stout, forensic science consultant Maurice Cooper, and Jonathan Cepeda to testify. During his testimony, Dooly

---

[1] Because the victim and his father share the same name, to avoid confusion we refer to the victim as "Soto" and to his father by the nickname "Dooly" as used in the record.

[2] The Information was later amended to charge him with: Count I, first-degree murder for the killing of Christian Soto, III, in violation of 14 V.I.C. § 922(a)(1); Count II, the attempted first-degree murder of Cyril Peters, in violation of 14 V.I.C. §§ 922(a)(1) and 331(1); Count III, the first-degree assault of Peters, in violation of 14 V.I.C. § 295(1); Count IV, the third-degree assault of W.J., in violation of 14 V.I.C. § 297(2); Count V, reckless endangerment, in violation of 14 V.I.C. § 625(a); and Count VI, unauthorized possession of a firearm during the commission of a crime of violence, in violation of 14 V.I.C. § 2253(a).

identified Cascen as the shooter and stated that he had selected Cascen's photo out of a photo array. During cross-examination, Cascen's attorney repeatedly interrupted Dooly as he was answering questions. The court instructed defense counsel to let Dooly answer uninterrupted, prompting a juror to make a statement that was transcribed in the record as "Yes, thank you," apparently in reference to the ruling. At sidebar, defense counsel moved for the juror's removal due to bias or for a mistrial over the statement, but the court denied this motion.

Detective Herbert then testified that Dooly had identified Cascen as the shooter before trial, selecting Cascen's photo out of a photo array. The photo array was then introduced into evidence. Herbert further testified that Jonathan Cepeda — who was present during the shooting — had selected Cascen's photo out of a photo array as well. This photo array was also admitted into evidence. When called by the People, Cepeda testified that he was lying when he identified Cascen as the shooter.

The People later called Detective Stout, a Firearms Supervisor for the Virgin Islands Police Department, who testified that a search of the firearm registry revealed that Cascen did not have a license to possess a firearm in the Virgin Islands, resulting in the creation of two absence-of-entry forms — one for the St. Thomas/St. John/Water Island District ("St. Thomas District"), and the other for the St. Croix District. Cascen objected to Detective Stout's ability to testify to the firearm records for the St. Thomas District. The court overruled the objection, and when Cascen attempted to question her about her ability to testify to the St. Thomas District records, the court prevented him from doing so. The People then called Maurice Cooper, a firearms expert, who testified about two bullet casings found at the scene. His analysis revealed that they were fired from the same handgun. Cascen objected to the admission of Cooper's report into evidence, but was overruled. After the People rested, Cascen moved for a judgment of acquittal, which the court denied. The defense then presented its case, calling Cepeda, Herbert, Detective Fred Brathwaite, and Karima Gaskin.

As the jurors returned to the courtroom after lunch on the fourth day of trial, Soto's mother, Roxanne Lewis, approached the jury, yelling. According to defense counsel, she shouted "they kill my son, I must get justice." During an in-chambers hearing following the incident, the court called the jurors into chambers and asked them to raise their hands if they had heard Lewis. Only one juror indicated that he had heard her, but did

not know what she was saying. Cascen then moved for a mistrial, arguing that Lewis's outburst had tainted the jury. Based on the jurors' indication that they had not heard what Lewis had said, the court denied Cascen's motion.

On the morning the parties were scheduled to give closing arguments, the court received a note from one of the jurors stating that there was a black pickup truck parked in front of her house for three to five minutes that morning. The note explained: "I could not see inside the vehicle because it was tinted. I am not sure if the person was on a phone call, but I would like you to get this information in case of anything." When the court questioned the juror, she stated that she had told one other juror about the incident and that the truck had been a black GMC pickup. She stated that no one in the truck attempted to contact her, but she wanted to make the court aware of the incident. Cascen moved for both jurors to be excused or for the court to declare a mistrial because the jurors could no longer be impartial. The court denied this motion and instead granted the People's motion to sequester the jury.

The jury found Cascen guilty on all counts on March 13, 2010. On March 23, 2010, Cascen again moved for a judgment of acquittal or a new trial, which the court denied on August 31, 2011. On December 28, 2011, the court sentenced Cascen to life imprisonment without parole for first-degree murder, ten years for the merged counts of attempted first-degree murder and first-degree assault, two years for third-degree assault, five years for reckless endangerment, and five years and a $25,000 fine for unauthorized possession of a firearm during a crime of violence. The Superior Court entered its Judgment and Commitment on January 20, 2012, and Cascen filed a timely notice of appeal the same day.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). Because the Superior Court's January 20, 2012 Judgment and Commitment was a final judgment, we have jurisdiction over this appeal. *Browne v. People*, 56 V.I. 207, 216 (V.I. 2012).

## III. DISCUSSION

█ Cascen argues that the Superior Court should have granted his motion for a judgment of acquittal because the evidence was insufficient

to support any of his convictions. He also asserts that the Superior Court committed several reversible errors, including violating his right to confront a witness against him, giving erroneous jury instructions on first-degree murder, and failing to take appropriate action following incidents purportedly affecting the jury's impartiality.[3] We address each argument in turn.

## A. Sufficiency of the Evidence

Cascen argues that the Superior Court erred in denying his motion for a judgment of acquittal because the People "failed to establish all of the essential elements of the offenses." "In reviewing a challenge to the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People, and affirm the conviction if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *George v. People*, 59 V.I. 368, 384 (V.I. 2013) (quoting *Mendoza v. People*, 55 V.I. 660, 667 (V.I. 2011)).

### 1. *First-degree murder*

The People charged Cascen with Soto's murder under 14 V.I.C. § 922(a)(1), which provides that "[a]ll murder which . . . is perpetrated by means of poison, lying in wait, torture, detonation of a bomb, or by any

---

[3] Cascen also challenges his conviction on the basis of the prosecutor's conduct during closing arguments. This conduct included comments that several witnesses were afraid to identify Cascen as the shooter, statements allegedly mischaracterizing the evidence, and the prosecutor's show of emotion at the end of his closing arguments. But aside from reciting a litany of allegedly improper statements — many of which were not objected to before the Superior Court — and making the blanket assertion that they were an "obvious attempt to inflame the passion of the jury and to create an atmosphere of fear," Cascen makes no substantive arguments as to how these statements prejudiced him or affected the jury's verdict. Therefore, this argument is waived. *See* V.I.S.Ct.R. 22(m) ("Issues that are . . . unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal.").

Cascen further asserts that the Superior Court erred in allowing Maurice Cooper to testify when the People failed to provide Cascen with a summary of Cooper's testimony during pre-trial discovery. But even assuming Cascen is correct that the failure to provide a summary of Cooper's testimony before trial constituted a discovery violation, reversal is not warranted unless there is a "likelihood that the verdict would have been different had the government complied with the discovery rules." *United States v. Davis*, 397 F.3d 173, 178 (3d Cir. 2005). It is clear here that the People's failure to provide a summary of Cooper's testimony did not prejudice Cascen, as Cooper's testimony established only that two bullet casings were found at the scene and that they came from the same firearm. Nothing in Cooper's testimony tied these bullet casings to Cascen and a firearm was never recovered.

other kind of willful, deliberate and premeditated killing" constitutes first-degree murder. Cascen argued in his motion for a judgment of acquittal that the People failed to prove premeditation because there was no evidence that he intended to kill Soto. The Superior Court rejected this argument, holding that the evidence supported a finding that Cascen intended to kill Peters, and that intent could be transferred to Soto to support the first-degree murder conviction. Cascen argues on appeal that transferred intent does not apply in the Virgin Islands because 14 V.I.C. § 922(a)(1) "expresses a clear, legislative intent that the 'intent and premeditation' elements of the crime should apply to the same person whom the defendant intended to kill."

■ Transferred intent is a common law doctrine providing that "if an accused shoots at another intending to kill him, and a third person is killed because of the act, that same intent follows the bullet and is transferred to the killing of the third person, even if such death was accidental or unintentional." *Riddick v. Commonwealth*, 226 Va. 244, 308 S.E.2d 117, 119 (1983); *see also State v. Wesley*, 254 Ore. App. 697, 295 P.3d 1147, 1150 (2013) (" 'If one shoots at A and misses him, but kills B, this is murder; because of the previous felonious intent, which the law transfers from one to the other.' " (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES *201)). "The purpose of transferred intent is to link the mental state directed towards an intended victim, i.e., the intent to kill, maim, or disable that person, with the actual harm caused to another person. In effect, transferred intent makes a whole crime out of two component halves." *Ford v. State*, 330 Md. 682, 625 A.2d 984, 997 (1993), *disapproved on other grounds in Henry v. State*, 419 Md. 588, 19 A.3d 944, 951-52 (2011).

In first announcing the doctrine of transferred intent, early English case law explained that because the defendant acted with the intent to commit murder and death resulted, the defendant was still guilty of murder even though he killed an unintended victim, "for he was the original Cause of the Death, and if such Death should not be punished in him, it would go unpunished." William L. Prosser, *Transferred Intent*, 45 TEX. L. REV. 650, 662 n.28 (1967) (quoting *The Queen v. Saunders & Archer*, 75 Eng. Rep. 706, 708 (1576)). Subsequently, transferred intent became a "bedrock principle of English common law," *Wesley*, 295 P.3d at 1150, and as a result, "there is a singular unanimity among the decisions in the overwhelming majority of the states" that transferred intent continues to

apply in first-degree murder prosecutions. *Gladden v. State*, 273 Md. 383, 330 A.2d 176, 181-82 (1974) (collecting cases); *see also Millen v. State*, 988 S.W.2d 164, 166 (Tenn. 1999) ("The doctrine has been widely applied to all forms of homicide by the majority of courts."); *O'Connor v. United States*, 399 A.2d 21, 24-25 (D.C. 1979) ("[I]t is beyond dispute that the doctrine of transferred intent is well entrenched in common law. . . . represent[ing] the majority position in this country.").

■■ Furthermore, despite Cascen's assertion that the Legislature abrogated this common law doctrine, we recently explained that section 922 did not abrogate the common law, but "merely codified and categorized the common-law definition of murder, while retaining its substance." *Tyson v. People*, 59 V.I. 391, 408 (V.I. 2013) (citing *People v. Charles*, 1 V.I. 201, 203 (D.V.I. 1929) & *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472, 474-75 (1958)). This conclusion is further supported by the well-settled canon of statutory construction that "[w]hen the Legislature borrows a statute from another jurisdiction, the local enactment is construed to mean what the highest court of that jurisdiction construed it to mean before the Legislature adopted it." *Brunn v. Dowdye*, 59 V.I. 899, 909 (V.I. 2013). Even though it is unclear from which jurisdiction the Legislature borrowed section 922, we noted in *Tyson* that when the Legislature first codified the language of this section in 1921, California, Iowa, Pennsylvania, and New York had substantially identical statutes, *Tyson*, 59 V.I. at 407, n.13, and each of these jurisdictions recognized transferred intent under their murder statutes. *See People v. Shabazz*, 38 Cal. 4th 55, 40 Cal. Rptr. 3d 750, 130 P.3d 519, 523 (2006) (citing *People v. Suesser*, 142 Cal. 354, 75 P. 1093, 1098 (1904)); *Commonwealth v. Johnson*, 219 Pa. 174, 68 A. 53, 53 (1907); *State v. Williams*, 122 Iowa 115, 97 N.W. 992, 996 (1904); *People v. Loose*, 199 N.Y. 505, 92 N.E. 100, 102 (1910). Therefore, given that the highest courts of these jurisdictions were unanimous in applying transferred intent under nearly identical statutes, we must presume that the Legislature was aware of this construction at the time it first codified murder in the Virgin Islands and intended the local enactment to be construed in the same manner. *See Lorillard v. Pons*, 434 U.S. 575, 580, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978) (a legislature "is presumed to be aware of [the] judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change"); *Gov't of the V.I. v. 19.623 Acres of Land*, 602 F.2d 1130, 1138, 16 V.I. 587 (3d Cir.

1979) (" '[t]he legislature is presumed to know the common law before the statute was enacted' " (quoting 2A SUTHERLAND, STATUTORY CONSTRUCTION, § 50.01 at 268 (4th ed. 1973))).

 However, we note that the Legislature substantially diminished the necessity of transferred intent by passing Act No. 6493 in 2001. 2001 V.I. Sess. Laws 394. This legislation, enacting the Virgin Islands Gun Control Act of 2001, added first-degree assault to the list of felonies that can support a conviction for first-degree felony murder. *See* Act No. 6493 § 1(a) (V.I. Reg. Sess. 2001) (amending 14 V.I.C. § 922(a)(2) to provide that "All murder which . . . is committed in the perpetration or attempt to perpetrate . . . assault in the first degree . . . is murder in the first degree"). Accordingly, a defendant who kills another during the commission of an assault "with intent to commit murder" under 14 V.I.C. § 295(1) can be charged and convicted of first-degree felony murder and would be subject to the same punishment as a defendant charged and convicted of premeditated murder — "imprison[ment] for the remainder of his natural life without parole," 14 V.I.C. § 923 — without relying on transferred intent. Here, in the course of committing first-degree assault with intent to murder Peters, Cascen shot and killed Soto. Therefore, Cascen could have been charged and convicted for first-degree felony murder and sentenced to life without parole without requiring the use of transferred intent to make "a whole crime out of two component halves." *Ford*, 625 A.2d at 997; *see generally Tyson*, 59 V.I. at 403-416 (discussing felony murder under section 922(a)(2)).

 Even so, merely because the Legislature created an alternate avenue for the People to obtain a first-degree murder conviction in a case like this one does not necessarily mean that in doing so it foreclosed the use of the common law doctrine of transferred intent. *See, e.g., Millen*, 988 S.W.2d at 167-68 (affirming a murder conviction obtained through transferred intent even where "prosecuting these 'unintended victim' cases as felony murder would appear to be the most appropriate application" of the murder statute). As mentioned above, section 1(a) of Act No. 6493 amended 14 V.I.C. § 922(a)(2) by adding "assault in the first degree, assault in the second degree, assault in the third degree and larceny" to the list of enumerated felonies that can support a felony murder conviction. 2001 V.I. Sess. Laws 394. In interpreting a statute, "it is presumed the [L]egislature does not intend to change the common law, absent language so indicating." *Tyson*, 59 V.I. at 414 (citing *Davis v. Fox*,

229 W. Va. 662, 735 S.E.2d 259, 265 (2012)). Significantly, nothing in the language of Act No. 6493 suggests that the Legislature in any way intended to abrogate or modify the common law doctrine of transferred intent as applied to premeditated murder. *See, e.g., Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 736 S.E.2d 910, 917 (2013) ("The Court presumes that no change to the common law was intended, and abrogation only occurs when the legislative intent to do so is plainly manifested." (internal quotation marks omitted)); *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 73 (Minn. 2012) ("we presume that statutes are consistent with the common law and do not presume that the Legislature intends to abrogate or modify a common law rule except to the extent expressly declared or clearly indicated in the statute"); *Beach v. Beach*, 74 P.3d 1, 4 (Colo. 2003) ("A statute is not presumed to alter the common law except to the extent that such statute expressly provides."). Moreover, interpreting 14 V.I.C. § 922(a) to allow the People to charge a "bad aim" case as either premeditated murder or felony murder is in line with precedent from other jurisdictions confronting the same situation. *See, e.g., State v. Jones*, 257 Kan. 856, 896 P.2d 1077, 1087 (1995) (holding that where the "defendant shot at . . . rival gang member(s) and killed a passerby," he could be convicted of either premeditated or felony murder); *Millen*, 988 S.W.2d at 168 ("The most obvious application of the first degree murder statute is that killing an innocent bystander during an attempt to perpetrate first degree murder constitutes felony murder. Alternatively, if the defendant kills an innocent bystander, the evidence may satisfy the elements of intent, premeditation, and deliberation" to support premeditated first-degree murder); *see also Poe v. State*, 341 Md. 523, 671 A.2d 501, 504 (1996) ("Both [felony murder and transferred intent] doctrines are used to impose criminal liability for unintended deaths.").

 Accordingly, if the evidence was sufficient for the jury to find that Cascen opened fire with the intent to kill Peters, but killed Soto in the process, then the evidence was sufficient to support Cascen's conviction for first-degree murder. At trial, Dooly testified that he was with Soto, Peters, and others when Cascen arrived, exited his vehicle holding a chrome handgun, and began firing at Peters. After Cascen began firing, Peters left his car and began to run from Cascen, with Cascen firing more shots at him, one of which struck and killed Soto. Dooly positively identified Cascen in court and stated that he was familiar with Cascen

405

because they lived in the same neighborhood. Further, Yessenia Knowles testified that there was a "feud" between Cascen and Peters, and that Cascen had threatened to kill Peters in the past. Additionally, Cepeda identified Cascen as the shooter before trial in a statement made to Detective Herbert and selected Cascen's photo out of a photo array.[4] This evidence was sufficient to support a finding that Cascen's actions were premeditated, because when viewed in the light most favorable to the People, the jury could have inferred from Cascen's actions — getting out of his car and firing his gun toward Peters — that Cascen had "conceive[d] the design or plan to kill" Peters. *Brown*, 54 V.I. at 506-07 (identifying "the nature of the weapon used," "lack of provocation," and "the use of a deadly weapon on an unarmed victim" as factors supporting a finding of premeditation); *see also Codrington v. People*, 57 V.I. 176, 189-90 (V.I. 2012) (based on testimony that "Codrington left his car, walked toward Mr. Aguilar with a gun in hand, and shot Mr. Aguilar once, . . . [a] rational jury could infer . . . that Codrington formed a plan to kill Mr. Aguilar while walking from his car to Mr. Aguilar"). Similarly, here the evidence was sufficient to establish that Cascen intended to kill Peters when he opened fire outside of the Harvey Housing Community and killed Soto. Consequently, because this intent was transferred to Soto, the evidence was sufficient to support Cascen's first-degree murder conviction. Furthermore — because this evidence supports the finding that Cascen intended to kill Peters — it is also sufficient to support his conviction for the attempted first-degree murder of Peters, as a transferred intent theory of liability allows convictions for both the first-degree murder of the unintended victim and the attempted murder of the intended victim. *See People v. Scott*, 14 Cal. 4th 544, 59 Cal. Rptr. 2d 178, 927 P.2d 288, 289 (Cal. 1996) ("conviction based on a transferred intent theory of liability was proper regardless of the fact [that the defendant was] also charged with attempted murder of the intended victim"). We therefore

---

[4] Cepeda's prior inconsistent statement was properly admitted as substantive evidence in this case because the trial took place before the Legislature repealed 14 V.I.C. § 19 and adopted the Federal Rules of Evidence on April 7, 2010. *Simmonds v. People*, 59 V.I. 480, 503 (V.I. 2013). Furthermore, even without this statement to corroborate Dooly's testimony, the testimony of a single witness is sufficient to support a conviction, even if uncorroborated and contradicted by other testimony. *Connor v. People*, 59 V.I. 286, 290 (V.I. 2013) ("a single positive eyewitness identification may be sufficient proof of guilt, even if it is contradicted by the accused or by alibi testimony"); *see also George*, 59 V.I. at 383.

affirm Cascen's convictions for first-degree murder and attempted first-degree murder.[5]

## 2. *Third-degree assault*

In Count IV, the People charged Cascen with the third-degree assault of W.J. under 14 V.I.C. § 297(2). Section 297(2) provides that "[w]hoever, under circumstances not amounting to an assault in the first or second degree . . . assaults another with a deadly weapon" commits third-degree assault. In order to obtain a conviction under section 297(2), the People must prove that

> a defendant [committed] an "assault," which is defined as "any unlawful violence upon the person of another with intent to injure him, whatever be the means or degree of violence used," 14 V.I.C. § 292, while to obtain a conviction for assault in the third degree, the People are required to prove the additional element that the assault was "with a deadly weapon." 14 V.I.C. § 297(2).

*Phipps v. People*, 54 V.I. 543, 550 (V.I. 2011) (holding that simple assault is a lesser included offense of third-degree assault).

Cascen argues that the evidence was insufficient to support this conviction because the People failed to prove that he intended to assault W.J. Cascen is correct that there was no evidence at trial that he intended to assault W.J., and therefore his sufficiency challenge hinges solely on whether Cascen's intent to murder Peters could be transferred to W.J. to support the third-degree assault conviction. Unlike first-degree murder — which only requires the People to prove that the defendant had the specific intent to commit murder, *see Codrington*, 57 V.I. at 184-85 — "the People were required to prove that [the defendant] used unlawful violence upon [the victim] *with the specific intent to injure him*" to obtain a conviction for assault. *Boston v. People*, 56 V.I. 634, 641 (V.I. 2012)

---

[5] Because the Superior Court merged the first-degree assault and attempted murder convictions, it is unnecessary for us to review the sufficiency of the evidence for the first-degree assault conviction. *See Tyson*, 59 V.I. at 403 n.8 ("The Superior Court . . . merged the assault conviction . . . with the corresponding first-degree murder conviction. Thus, our holding that the People introduced sufficient evidence to sustain [the murder] conviction renders it unnecessary for us to review the sufficiency of the evidence of the [merged] assault conviction.") (citing *State v. Beebe*, 131 Conn. App. 485, 27 A.3d 26, 33 (2011)).

(emphasis added). This prevents Cascen's intent to murder Peters from being used to support an assault conviction because even though the People showed that Cascen used "unlawful violence upon the person of" W.J., the People introduced no evidence establishing that Cascen had the "intent to injure" W.J. *See Gov't of the V.I. v. Davis*, 561 F.3d 159, 169-70, 51 V.I. 1179 (3d Cir. 2009) (holding that a jury instruction on transferred intent in a first-degree assault prosecution impermissibly relieved the People of its burden of proving every element of the crime beyond a reasonable doubt, warranting reversal); *Gov't of the V.I. v. Greenidge*, 600 F.2d 437, 440, 16 V.I. 154 (3d Cir. 1979) (same); *see also Harvey v. State*, 111 Md. App. 401, 681 A.2d 628, 644 (Md. Ct. Spec. App. 1996) (holding that where "the unintended victim is not killed, the transferred intent doctrine does not apply"). Therefore, because Cascen's intent to kill Peters cannot be transferred to W.J. to support the assault conviction, the evidence was insufficient for the jury to find Cascen guilty of third-degree assault, and we reverse this conviction.

### 3. Reckless endangerment

 ██ In Count V, the People charged Cascen with first-degree reckless endangerment under 14 V.I.C. § 625(a), which provides that "[a] person is guilty of reckless endangerment in the first degree when, under . . . circumstances evidencing a depraved indifference to human life, he recklessly engages in conduct in a public place which creates a grave risk of death to another person." The testimony outlined previously — indicating that Cascen fired a gun into a gathering of people outside the Harvey Housing Community — "is, by definition, the epitome of reckless conduct creating a grave risk of death under circumstances evincing an extreme indifference to human life." *Augustine v. People*, 55 V.I. 678, 689 (V.I. 2011) (citation and internal quotation marks omitted); *see also Tyson*, 2013 V.I. Supreme LEXIS 38 at *48 ("[b]y its plain terms, . . . [section 625(a)] requires only a showing that the conduct was done in a place that is open to the public or where the public has a right to be, thereby posing a risk of death to members of the public who may be in the area." (quoting *Alcindor v. Gov't of the V.I.*, D.C. Crim. App. No. 2004/84, 2006 U.S. Dist. LEXIS 88212, at *1 (D.V.I. App. Div. Nov. 28, 2006) (citation and emphasis omitted; alterations in original)); 14 V.I.C. § 625(c)(1) (" 'reckless endangerment' means when a person consciously and knowingly engages in conduct or behavior that may pose intentional

harm or physical injuries to another human being or property"). Therefore, we have no trouble concluding that the evidence was sufficient to support Cascen's conviction for reckless endangerment.

### 4. Unauthorized possession of a firearm

 Finally, the People charged Cascen with unauthorized possession of a firearm during the commission of a crime of violence under 14 V.I.C. § 2253(a). At trial, Karen Stout, a supervisor in the Firearms Division of the Virgin Islands Police Department, testified that she searched the firearms records for both the St. Croix District and the St. Thomas District. This search revealed that Cascen did not have a license to possess a firearm in the Virgin Islands at the time of the shooting, producing two absence-of-entry forms that were admitted into evidence. Therefore — even though we hold in the following section that the admission of these forms violated the Confrontation Clause — this evidence was sufficient to support Cascen's conviction for unauthorized possession of a firearm. *Simmonds v. People*, S. Ct. Crim. No. 2012-0074, 2013 V.I. Supreme LEXIS 42 at *14 (V.I. Aug. 13, 2013); *see also Ambrose v. People*, 56 V.I. 99, 107 (V.I. 2012) ("when an appellate court reviews the sufficiency of the evidence, it must consider all the evidence the jury had before it, including any evidence that is later determined to be inadmissible" (internal quotation marks and citation omitted)); *Williams v. People*, 59 V.I. 1043, 1046 n.2 (V.I. 2013) ("the evidence introduced at trial was sufficient to sustain [the defendant's] murder conviction" even where all of that evidence was held to be inadmissible).

## B. Right of Confrontation

Cascen next argues that the Superior Court denied him the right to confront a witness by limiting his cross-examination of Stout. At trial, the Superior Court admitted absence-of-entry forms generated by Stout, showing that Cascen did not have a license to possess a firearm in the Virgin Islands, and when Cascen attempted to cross-examine her about her ability to testify to these records, the court prevented him from doing so. Cascen argues that this "effectively denied [him] the right to confront a witness on crucial matters affecting his guilt or innocence" on the unauthorized possession of a firearm charge. We review the Superior Court's limitation of cross-examination only for an abuse of discretion, *United States v. Ellis*, 156 F.3d 493, 498 (3d Cir. 1998), but we apply

plenary review to Cascen's claim that these restrictions violated his constitutional right to confront a witness against him. *Fontaine v. People*, 59 V.I. 640, 651 (V.I. 2013) (" 'The standard of review for challenges under the Sixth Amendment's Confrontation Clause is plenary.' " (quoting *Latalladi v. People*, 51 V.I. 137, 141 (V.I. 2009))).

 The Confrontation Clause of the Sixth Amendment to the United States Constitution[6] provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Due to this constitutional guarantee, the Superior Court cannot admit any testimonial statement against a defendant unless the declarant appears at trial and is subject to cross-examination, or — if unavailable at the time of trial — was previously subject to cross-examination by the defendant. *Tyson*, 59 V.I. at 548 (citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)). Testimonial statements include material such as "affidavits, custodial examinations, . . . or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," in addition to "extrajudicial statements . . . that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz*, 557 U.S. at 310 (quoting *Crawford v. Washington*, 541 U.S. 36, 51-52, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).

 Here, the absence-of-entry forms created by Stout are clearly testimonial statements as defined by the Supreme Court in *Melendez-Diaz*. As the Court explained in that case, while a government official "could by affidavit *authenticate* or provide a copy of an otherwise admissible record" without testifying at trial, she could not "*create* a record for the sole purpose of providing evidence against a defendant" without testifying and being subject to cross-examination. *Melendez-Diaz*, 557 U. S. at 322-23 (emphasis in original). Furthermore, although a "clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it . . . would

---

[6] The Sixth Amendment applies in the courts of the Virgin Islands to the same extent as it does in state and federal courts through section 3 of the Revised Organic Act of 1954, the organizing document of this Territory. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (preceding V.I. CODE ANN. tit. 1).

qualify as an official record" — which is typically admissible as a hearsay exception[7] — this is irrelevant where the document was created specifically for use at trial, making it testimonial in nature and subject to the Confrontation Clause.[8] *Id.* at 322-23 ("Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status . . . [b]ut that is not the case if the regularly conducted business activity is the production of evidence for use at trial."); *see also Gov't of the V.I. v. Gumbs*, 426 Fed. Appx. 90, 94 (3d Cir. 2011) (holding that an absence-of-entry form is testimonial because it is "offered as substantive evidence against a defendant whose guilt depends on the document's accuracy"); *United States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010) (holding that certificates of nonexistence of record are testimonial because they "are not routinely produced in the course of government business but instead are exclusively generated for use at trial"). Stout's testimony that she produced the absence-of-entry forms at the People's request on October 1, 2008 —the day the People filed the Information against Cascen — demonstrates that the forms were "prepared specifically for use at . . . trial," *Melendez-Diaz*, 557 U.S. at 324, and therefore were testimonial statements under the Confrontation Clause. *See United States v. Smith*, 640 F.3d 358, 363, 395 U.S. App. D.C. 95 (D.C. Cir. 2011) (holding that documents "created at the request of the Department of Justice shortly before . . . trial" and "made for the purpose of establishing or proving a fact at trial" were testimonial); *cf. United States v. Cameron*, 699 F.3d 621, 642 (1st Cir. 2012) (holding that records

---

[7] Because Cascen's trial took place in March 2010 — before the Legislature adopted the Federal Rules of Evidence — the absence-of-entry forms were admissible as a hearsay exception pursuant to 5 V.I.C. § 932(17)(b). The Federal Rules of Evidence provide a similar exception in Rule 803(10). Effective December 1, 2013, Federal Rule of Evidence 803(10) was amended in response to *Melendez-Diaz*. FED. R. EVID. 803 Advisory Committee Notes (2013). Because the federal rule was not in effect at the time of trial, it does not affect our analysis, nor do we decide here what impact this amendment may have in future cases.

[8] Before *Melendez-Diaz*, most courts agreed that a certificate of nonexistence of record ("CNR") was nontestimonial, and therefore not subject to the Confrontation Clause. *United States v. Martinez-Rios*, 595 F.3d 581, 585 & n.3 (5th Cir. 2010) ("Before *Melendez-Diaz*, we held that a CNR is akin to an ordinary business record and therefore does not qualify as a testimonial statement subject to the Confrontation Clause. A majority of our sister circuits that considered the question reached the same conclusion.") (collecting cases). But these courts have since held that *Melendez-Diaz* abrogated this earlier case law. *See id.* at 585-86; *United States v. Orozco-Acosta*, 607 F.3d 1156, 1161 n.3 (9th Cir. 2010); *Tabaka v. District of Columbia*, 976 A.2d 173, 175 (D.C. 2009).

of a private company were not testimonial where they were kept "in order to serve business functions that were totally unrelated to any trial or law enforcement purpose").

 Unlike in *Melendez-Diaz*, however, Stout — as the official who prepared both absence-of-entry forms — did testify at trial. Despite this, a defendant is still denied the right to confront a witness where "constitutionally impermissible restrictions were placed on the cross-examination itself." *George*, 59 V.I. at 380; *see also Williams v. People*, 56 V.I. 821, 829 (V.I. 2012) ("Under the Confrontation Clause, [a defendant has] the right to cross-examine any witness who gives testimony against him."). When Cascen attempted to question Stout about her ability to testify to the St. Thomas District records, the court instructed her not to answer, asking defense counsel "[w]hat are you going to cross-examine her on? I already made . . . my ruling." However, even if the Superior Court did not err in holding that the forms were admissible pursuant to Stout's testimony, Cascen was still entitled to cross-examine Stout on the reliability of the process used to create the records, whether any potential bias or impropriety affected her testimony, or any other circumstances that may have impacted the reliability of the forms. *See George*, 59 V.I. at 380 (the right of confrontation is violated where a defendant is " 'prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness' " (quoting *United States v. Chandler*, 326 F.3d 210, 222 (3d Cir. 2003))); *United States v. de Jesus-Casteneda*, 705 F.3d 1117, 1120 n.3 (9th Cir. 2013) ("The primary purpose of the Confrontation Clause is to ensure the reliability of testimony by permitting the jury to draw conclusions from the manner and demeanor of the witness."). Without this cross-examination, Cascen's right to confront a witness against him was violated, and the admission of the absence-of-entry forms constituted an abuse of discretion. And, because the absence-of-entry forms were the only evidence supporting Cascen's conviction for unauthorized possession of a firearm, we cannot say this error was harmless beyond a reasonable doubt because the jury must have relied on them in returning a guilty verdict. *Fahie v. People*, 59 V.I. 505, 517 (V.I. 2013) ("If, at the end of our examination, we 'cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the [constitutional] error . . . [we] should not find the error harmless.' " (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999))).

Therefore, because the Superior Court committed harmful error in admitting the absence-of-entry forms without providing Cascen the opportunity to cross-examine the official who prepared them, we reverse his conviction for unauthorized possession of a firearm during a crime of violence.

## C. Jury instructions

Cascen argues that the Superior Court committed reversible error in its jury instructions on first-degree murder.[9] Because Cascen did not object to the jury instructions at trial, we review these arguments only for plain error. V.I.S.CT.R. 4(h); *see Christopher v. People*, 57 V.I. 500, 512 (V.I. 2012). Under plain error review, there must be an error, that was plain, that affected the defendant's substantial rights. *Williams*, 59 V.I. at 1031. Even then, this Court will only reverse where " 'the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (quoting *Francis v. People*, 52 V.I. 381, 390-91 (V.I. 2009)) (internal alteration omitted).

Cascen contends that the Superior Court incorrectly instructed the jury on premeditated first-degree murder when it referenced felony murder in the instructions because the People did not charge him with felony murder. In this instruction, the court told the jury:

> Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious and premeditated killing, or . . . committed in the perpetration or attempt to perpetrate an Assault in the First Degree or an Assault in the Third Degree [is murder in the first degree].

Cascen is correct that the Superior Court included felony murder within its definition of first-degree murder by informing the jury that a killing "committed in the perpetration or attempt to perpetrate" a first- or third-degree assault also constitutes first-degree murder. But in reviewing this instruction, we must examine the jury instructions as a whole to determine whether it was "misleading or inadequate to guide the jury's deliberation." *Prince v. People*, 57 V.I. 399, 409 (V.I. 2012) (internal quotation marks omitted). And

---

[9] Cascen also challenges the Superior Court's instructions on third-degree assault, but because we reverse that conviction for insufficient evidence, we do not reach this argument.

regardless of whether the Superior Court erred by including felony murder within its definition of first-degree murder, it is clear in this case that it did not affect Cascen's substantial rights. Immediately after defining first-degree murder, the court instructed the jury that:

> In order to sustain its burden of proof, the crime of Murder in the First Degree in Count 1, the People of the Virgin Islands must prove these . . . essential elements beyond a reasonable doubt.
>
> One, that the Defendant, Colly Cascen, willfully and unlawfully killed a human being, Christian Soto;
>
> Two, that the Defendant acted with malice aforethought, deliberation and premeditation by shooting him with a firearm;
>
> And three, that the events took place in the judicial district on the island of St. Croix, U.S. Virgin Islands on or about September 7, 2008.

This instruction properly laid out the elements of first-degree murder under 14 V.I.C. § 922(a)(1) without reference to felony murder by informing the jury that in order to obtain a conviction, the People were "require[d to] prove the defendant (1) unlawfully killed another, (2) with malice aforethought, and (3) in a willful, deliberate, and premeditated manner." *Codrington*, 57 V.I. at 184-85 (citing *Brown v. People*, 54 V.I. 496, 505 (V.I. 2011)). When the jury requested that the definition of first-degree murder be repeated during deliberations, an identical instruction was given, explaining first-degree murder as defined by section 922(a)(1) and (2), but then instructing the jury that it could only convict if it found that the elements of first-degree murder under section 922(a)(1) were proven beyond a reasonable doubt. Because we "must assume that juries for the most part understand and faithfully follow instructions," *Galloway v. People*, 57 V.I. 693, 711 (V.I. 2012) (citation and internal quotation marks omitted), and Cascen does not explain how the reference to felony murder affected his substantial rights in light of the fact that the jury was properly instructed on the elements of premeditated first-degree murder, the Superior Court did not commit plain error in this instruction. *Cf. United States v. McRae*, 593 F.2d 700, 705-06 (5th Cir. 1979) (the rights of second-degree murder defendant were not prejudiced when the trial court included the definition of first-degree murder in the jury instructions where the jury was properly instructed that it must find the elements of second-degree murder to convict).

## D. Jury Impartiality

Cascen further insists that the Superior Court denied him the right to an impartial jury by failing to strike three jurors or declare a mistrial following three incidents during trial. We review the Superior Court's decision on whether to remove a juror prior to deliberations for an abuse of discretion. *Dowdye v. People*, 55 V.I. 736, 751 (V.I. 2011). We also review the Superior Court's refusal to grant a mistrial for an abuse of discretion. *George*, 59 V.I. at 376.

 "The Sixth Amendment secures to criminal defendants the right to trial by an impartial jury." *Skilling v. United States*, 561 U.S. 358, 377, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010). "An impartial jury consists of nothing more than jurors who will conscientiously apply the law and find the facts." *United States v. Jones*, 566 F.3d 353, 358 (3d Cir. 2009) (citing *Lockhart v. McCree*, 476 U.S. 162, 178, 106 S. Ct. 1758, 90 L. Ed. 2d 137 (1986)) (internal quotation marks omitted). "When a defendant asserts a general Sixth Amendment challenge as to the partiality of a jury based upon circumstances occurring outside of *voir dire*, 'the remedy . . . is a hearing in which the defendant has the opportunity to prove actual bias.' " *Ritter v. People*, 51 V.I. 354, 371 (V.I. 2009) (quoting *Smith v. Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982)).

 Cascen argues that the first incident — in which a juror remarked "Yes, thank you"[10] after the court instructed Cascen's attorney to allow Dooly to finish answering a question before asking the next question — warranted the removal of the juror or the declaration of a mistrial. After the juror's remark, Cascen requested a sidebar in which he moved for the juror's dismissal or alternatively a mistrial. The court denied the motion, stating that Cascen's attorney had been badgering the witness and that there was "no indication whatsoever that [the juror] show[ed] any predisposition to convict [Cascen] . . . . If anything, it's a reaction" to defense counsel's conduct. "It is well established that great deference is afforded trial courts in their findings concerning juror

---

[10] The statement was recorded in the trial transcript as "Yes, thank you." At sidebar, defense counsel characterized the statement as "something to the effect to shut up or something; let him answer." The prosecutor stated that he "heard a sound" but had not heard what was said. In his appellate brief, Cascen quoted the statement as "leave him alone, let him answer how he wants to." At oral arguments, Cascen's attorney stated that "to counsel's recollection, . . . Juror Number 7 stood up, pointed to counsel, and said 'let him answer the way he wants.' "

impartiality." *Dowdye*, 55 V.I. at 762 (citing *Mu'Min v. Virginia*, 500 U.S. 415, 428, 111 S. Ct. 1899, 114 L. Ed. 2d 493 (1991)). The Superior Court did not hold a hearing or question the juror before denying Cascen's motion to strike, but "a hearing is necessary only when reasonable grounds exist to believe that the jury may have been exposed to an extraneous influence." *Ritter*, 51 V.I. at 371 (citing *United States v. Moten*, 582 F.2d 654, 667 (2d Cir. 1978)). There is no allegation here that any member of the jury was subject to extraneous influence, and Cascen fails to articulate how the juror's comment — even if inaccurately transcribed in the record — demonstrated the juror's bias. Furthermore, as a finding of fact, we review the Superior Court's finding on jury conduct only for clear error, *see United States v. Vartanian*, 476 F.3d 1095, 1098 (9th Cir. 2007) ("factual findings relating to the issue of juror misconduct [are reviewed] for clear error"), and Cascen fails to demonstrate how the Superior Court's finding that the juror's comment was merely a reaction to defense counsel's conduct was clearly erroneous. *Cf. United States v. Tegzes*, 715 F.2d 505, 509 (11th Cir. 1983) ("the spectre of bias or prejudice created by [a] jurors' remarks is too speculative and conjectural to overcome the general presumption in favor of jury impartiality" where the statement did not show a "predisposition toward the prosecution or accused").

 The next incident Cascen fears unduly prejudiced the jury occurred when a juror sent a note to the Superior Court indicating that on the morning of the final day of trial, a black pick-up truck parked in front of the juror's house for three to five minutes before departing. After receiving the note, the court called the juror into chambers with the prosecution and defense counsel to ask her about the incident. When asked what effect the incident had on her, the juror responded that "I just wanted you to know that I observed a vehicle in front of my door. I don't know what to think," and that the person in the car made no attempt to contact her, driving away after a few minutes. Following this inquiry, the court denied the motion to strike and the motion for a mistrial, noting that the juror had not expressed any bias as a result of the incident. Cascen insists that the juror should have been removed, alleging that the juror indicated that the truck "had some sinister motive for being there, and that [Cascen] had something to do with the truck being in her neighborhood." But nothing in the record supports this assertion, and the Superior Court's finding that the juror was not biased by the incident was not clearly

erroneous. *See Yusuf v. Hamed*, 59 V.I. 841, 857 (V.I. 2013) (the Superior Court's findings of fact are clearly erroneous where they are " 'completely devoid of minimum evidentiary support or bear[] no rational relationship to the supportive evidentiary data.' " (quoting *In re Estate of Small*, 57 V.I. 416, 430 (V.I. 2012))). Accordingly, in light of the significant deference we accord the Superior Court in its resolution of allegations of juror bias, and the court's finding that the juror was not biased after questioning her about the incident, the Superior Court did not err in refusing to strike the juror or declare a mistrial. *See Gov't of the V.I. v. Dowling*, 814 F.2d 134, 137 (3d Cir. 1987) ("we accord great deference to the trial judge's wide discretion in using voir dire to determine the presence or absence of prejudice").

Cascen finally argues that the third incident — in which Soto's mother approached the jurors as they were returning from lunch and yelled "something to the effect that she is looking for justice and her child was killed" — obligated the Superior Court to "make the type of [i]nquiry which would have determined whether the extraneous information was prejudicial" to Cascen. But the Superior Court did make an inquiry, calling the entire jury into chambers and asking if any of them had heard what Soto's mother had said. Only one juror said he had heard anything, but did not understand what Soto's mother was saying. All the other jurors indicated that they had not heard anything at all. Although Cascen insists that "[i]t is reasonable to conclude . . . that some, if not all of the jurors, heard [the mother's] outburst," there is no support in the record for this assertion; the jurors unanimously indicated that they had not heard what the mother had said and Cascen fails to explain how he could have been prejudiced by extraneous information that failed to reach the jury. Consequently, because there is nothing in the record supporting Cascen's assertions of juror bias — and the Superior Court appropriately responded to each of these incidents — the Superior Court did not abuse its discretion in refusing to strike the jurors or declare a mistrial.[11]

---

[11] Cascen also makes passing reference to the fact that the Superior Court sequestered the jury after receiving the juror's note regarding the black truck outside of her house. Cascen suggests that this was prejudicial because "there was no need for any heightened security measures." But other than making this assertion, Cascen fails to make any substantive argument as to how the sequestration prejudiced him, nor does he cite any authority for his claim of error. Therefore, this issue is waived. V.I.S.Ct.R. 22(m).

## E. The Superior Court's Judgment and Commitment

▮ Although Cascen does not raise this issue, we note that the Superior Court's January 20, 2012 Judgment and Commitment is inconsistent with the charges considered by the jury and the sentence announced at the sentencing hearing. It incorrectly identifies Count IV as reckless endangerment, Count V as unauthorized possession of a firearm during the commission of a crime of violence, and Count VI as using a dangerous weapon during the commission of a crime of violence. Because the Judgment and Commitment is the operative document governing the terms of Cascen's incarceration, we remand to the Superior Court so that it may amend the Judgment and Commitment to reflect the convictions and sentences imposed at the December 28, 2011 sentencing hearing.

## IV. CONCLUSION

The evidence was sufficient to support Cascen's convictions for first-degree murder, attempted first-degree murder, reckless endangerment, and unauthorized possession of a firearm during a crime of violence, but insufficient to support his conviction for third-degree assault. Additionally, the Superior Court committed harmful error in admitting absence-of-entry forms to show that Cascen did not have a license to possess a firearm without providing Cascen the opportunity to cross-examine the preparer of those documents free from undue restrictions. Therefore, we reverse Cascen's convictions for third-degree assault and unauthorized possession of a firearm, and affirm the remaining convictions. Furthermore, because the Judgment and Commitment misidentifies the crimes for which Cascen was convicted and the sentences imposed for those convictions, we remand with instructions for the Superior Court to amend the Judgment and Commitment.