IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

November 18, 2024 03:28 PM
SCT-Crim-2022-0044
**VERONICA HANDY, ESQUIRE**
**CLERK OF THE COURT**

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

PEOPLE OF THE VIRGIN ISLANDS,    )
    Appellant/Plaintiff,    )
     )
     )
v.      )
     )
SHEKIL BERTHIER,     )
    Appellee/Defendant.    )
     )

**S. Ct. Crim. No. 2022-0044**
Re: Super. Ct. Crim. No. ST-2020-CR-00003 (STT)

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Kathleen Mackay

Argued: October 10, 2023
Filed: November 18, 2024

Cite as: 2024 V.I. 32

BEFORE:    **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and, **IVE ARLINGTON SWAN**, Associate Justice

APPEARANCES:

**Michael R. Francisco, Esq.**
Assistant Attorney General
St. Thomas, U.S.V.I
   *Attorney for Appellant*,

**Adam G. Christian, Esq.**
Ogletree, Deakins, Nash, Smoak & Stewart, LLC
St. Thomas, U.S.V.I.
   *Attorney for Appellee.*

## OPINION OF THE COURT

**CABRET, Associate Justice.**

¶1    The People of the Virgin Islands ("People") appeal from the Superior Court's July 26, 2022, order which granted Shekil Berthier's post-verdict motion for judgment of acquittal on

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Opinion of the Court
Page 2 of 9

2024 V.I. 32

the charge of reckless endangerment in the first-degree, based upon insufficient evidence to support the jury's verdict.[1] For the reasons that follow, we affirm the judgment of the Superior Court.

## I.   FACTS AND PROCEDURAL HISTORY

¶2      Because this appeal arises from the grant of a post-verdict motion for judgment of acquittal, we recite the evidence introduced at trial in the light most favorable to the People. *People v. Clarke*, 55 V.I. 473, 474 (V.I. 2011). On October 16, 2019, Renaldo Penn drove to his residence in Estate Frydenhoj to let his girlfriend, Sylvia Samuel, into their home because she had forgotten her key. As he approached his home at some point between 6:00 p.m. and 7:00 p.m., he saw a white vehicle with two male occupants blocking the road.[2] Penn waved and blew his horn to signal his desire to pass but received no response from the occupants. Penn then exited his vehicle and verbally asked the occupants of the other vehicle to move so that he could pass. At that point, another man—later identified as Berthier—went down the

---

[1] In its notice of appeal, the People state that it is seeking review of the Superior Court's order granting acquittal as to Counts Two, Three, and Four. However, the People's brief does not set forth arguments against the Superior Court's decisions as to Counts Two and Four, addressing the order solely as it pertains to Count Three.

> Supreme Court Rule 4(c) states that a notice of appeal "shall designate the judgment, order, or part thereof appealed from and the reason(s) or issue(s) to be presented on appeal." However, "an appellant [must] raise an issue in his opening brief or else waive the issue on appeal." *United States v. Hoffecker*, 530 F.3d 137, 162 (citing *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005)). Thus, issues raised in a notice of appeal but not argued in an appellant's brief are waived. *See Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 526 (3d Cir. 2003) (citing *FDIC v. Deglau*, 207 F.3d 153, 169 (3d Cir. 2000)); *see also Hoffecker*, 530 F.3d at 163 ("Inasmuch as [appellant] did not raise in his opening brief the issue[,] ... he has waived the issue."). [Appellant] therefore, is deemed to have waived his sufficiency of the evidence claim.

*Dowdye v. People*, 55 V.I. 736, 750 (V.I. 2011). Thus, we consider only the People's arguments addressing the Superior Court's ruling regarding Count Three, Reckless Endangerment.

[2] A second vehicle was parked along the side of the road preventing Penn from going around the white vehicle blocking the road.

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Opinion of the Court
Page 3 of 9

2024 V.I. 32

stairs to a nearby house, came back with a rifle, and fired a single shot at Penn from less than five feet away. Berthier then returned to that house, and the white vehicle reversed direction, turned around, and headed out toward the road's other exit.

¶3 The People ultimately charged Berthier with several offenses stemming from this incident, including assault, reckless endangerment, unauthorized possession of a firearm, and unauthorized possession of ammunition. The matter proceeded to a jury trial that began on March 7, 2022, and concluded on March 10, 2022. At the close of the People's case in chief, Berthier orally moved for judgment of acquittal on all four counts pursuant to Rule 29(a) of the Virgin Islands Rules of Criminal Procedure. With respect to the reckless endangerment charge, Berthier contended that the People failed to prove that the Frydenhoj road where the incident occurred had been a "public place" as required under the reckless endangerment statute. The Superior Court did not deny the motion, but reserved judgment and allowed the trial to continue. After closing arguments, the jury deliberated and found Berthier guilty of all counts.

¶4 On April 4, 2022, Berthier filed a written post-verdict motion for judgment of acquittal, renewing his previous argument that the incident did not occur in a public place as required by the reckless endangerment statute. On July 26, 2022, the Superior Court denied Berthier's Rule 29 motion as to the first-degree assault conviction, but granted it as to the other three charges. As to reckless endangerment, the Superior Court agreed with Berthier that the People failed to establish beyond a reasonable doubt that Frydenhoj road, where the underlying incident occurred, was a public place as contemplated by 14 V.I.C. § 625, and accordingly granted Berthier's motion for judgment of acquittal on the reckless endangerment conviction. *People v. Berthier*, ST-2020-CR-00003, 2022 V.I. LEXIS 60 (Super. Ct. July 26, 2022). On August

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Opinion of the Court
Page 4 of 9

2024 V.I. 32

24, 2022, the People timely filed its notice of appeal, challenging the Superior Court's ruling.[3]

## II.   JURISDICTION AND STANDARD OF REVIEW

¶5      Pursuant to the Revised Organic Act of 1954, this Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d). Title 4, section 32(a) of the Virgin Islands Code vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court." 4 V.I.C. § 32(a). Title 4, section 33(d)(1) of the Virgin Islands Code specifically permits the People, in a criminal case, to appeal

> from a decision, judgment, or order of the Superior Court dismissing an indictment or information or otherwise terminating a prosecution in favor of the defendant, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution or the Revised Organic Act prohibits further prosecution.

4 V.I.C § 33(d)(1). We have found that where the Superior Court enters a judgment of acquittal after a jury has rendered a guilty verdict, the "People may . . . appeal from that ruling without subjecting the defendant to double jeopardy." *People v. Clarke*, 55 V.I. 473, 477 (V.I. 2011) (citing *Smith v. Massachusetts*, 543 U.S. 462, 467 (2005)). Therefore, we possess jurisdiction over this appeal.

This Court exercises plenary review over all questions of law, and reviews factual findings only for clear error. *Thomas v. People*, 63 V.I. 595, 602-03 (V.I. 2015) (citing *Simmonds v. People*, 53 V.I. 549, 555 (V.I. 2010)). Regarding sufficiency of the evidence claims, we apply a "'particularly deferential standard of review' . . . and will affirm the verdict so long as the evidence, when viewed in a light most favorable to the People—including the

---

[3] After his sentencing, on January 4, 2023, Berther filed a notice of appeal from his first-degree assault conviction, which this Court docketed as *Berthier v. People*, S. Ct. Crim. No. 2023-0002. Although Berthier maintains in his appellate brief in this case that the disposition of his other appeal might render the People's appeal moot, this Court has not yet issued an opinion in that matter; therefore, the instant appeal is not moot at this time.

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Opinion of the Court
Page 5 of 9

2024 V.I. 32

benefit of all reasonable inferences—would allow a rational jury to find all elements of each offense proven beyond a reasonable doubt." *Ponce v. People*, 72 V.I. 828, 834 (V.I. 2020) (citations omitted).

## III.    DISCUSSION

¶6    As we articulated in *Davis v. People*, 69 V.I. 619 (V.I. 2018): "In order to obtain a conviction for first-degree reckless endangerment, the People must prove the defendant "(1) recklessly engaged in conduct (2) in a public place that (3) created a grave risk of death to another person (4) under circumstances evidencing a depraved indifference to human life." *Id.* at 635 (*citing* 14 V.I.C. § 625; *Woodrup v. People*, 63 V.I. 696, 711 (V.I. 2015)), *quoted in Berthier*, 2022 V.I. LEXIS 60, at *17. The reckless endangerment statute defines a *public place* as a "place to which the general public has a right to resort; but a place which is in point of fact public rather than private, and visited by many persons and usually accessible to the public." 14 V.I.C. § 625(c)(2). *See Davis*, 69 V.I. at 635.

¶7    In granting Berthier's post-verdict motion for judgment of acquittal, the Superior Court determined that the People had failed to prove beyond a reasonable doubt one of the necessary elements of the charge, specifically, that the roadway where the underlying incident occurred qualified as a "public place" for purposes of the statute. *Berthier*, 2022 V.I. LEXIS 60, at *20-21.

¶8    The Superior Court noted that the only evidence introduced by the People regarding the "nature or location" of the roadway at issue was the testimony of Ms. Samuel, who "testified the road leads to 'the gut' and to 'the bridge',[sic] and in the opposite direction it leads to the 'main road' and the Frydenhoj ballfield or ballpark"; the testimony of Mr. Penn who "referred to it as an 'unpaved, neighborhood road'"; and, "the photographs admitted at trial [that] display the road was [sic] unpaved and very narrow, with residences on both sides." *Berthier*, 2022

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Opinion of the Court
Page 6 of 9

2024 V.I. 32

V.I. LEXIS 60, at *21. Based upon that limited evidence, the Superior Court concluded that no rational jury could find that "the road is used by the public in general rather than only the residences next to the area, as is the standard established in *Davis.*" *Id.*

¶9    The People maintain that the Superior Court erred

> by applying *Davis'* private property analysis to this case. Instead, the Superior Court should have held that the evidence presented, when properly viewed in the light most favorable to the People, was sufficient for a rational jury to find the location of the shooting was a public road, which "is in point of fact public." In addition, the court should not have rejected the reasonable inference that Berthier's reckless conduct endangered members of the general public like the occupants of the white car or anyone else in range of Berthier's shot. By considering whether the court itself was swayed by the People's argument concerning these reasonable inferences, the court improperly invaded the province of the jury to whom it owed "substantial deference." *See, Todman v. People of the Virgin Islands*, 59 V.I. 675, 681 (V.I. 2015).

App'ant Br. at 19.

¶10    The People cite to several cases that mention the "public place" element of Section 625 that they claim are analogous to the facts presented in this matter. App'ant Br. at 16-17 n.3. However, such reliance upon those cases is misplaced, as the finding of a "public place'" is confined to the individual facts and evidence presented in each case. For example, in *Woodrup v. People*, 63 V.I. 696 (V.I. 2015), the definition of *public place* was not before this Court on appeal. The focus of that appeal was on "recklessness." Moreover, in *Woodrup* the verdict was supported by "testimony that Woodrup fired several gunshots on a public street populated by several members of the public. . . ." *Id.* at 711. Here, the evidence did not include such testimony.

As the Superior Court found, the People failed to establish that the road in question in Estate Frydenhoj was a "public" road. The sole issue implicated in this appeal is whether Berthier fired the rifle in a "public place." The Superior Court determined that "a public place requires general access to the public, rather than merely to residences nearby, so although the

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Opinion of the Court
Page 7 of 9

2024 V.I. 32

public can access the Estate Frydenhoj roadway, it is a residential area utilized by those who live along the neighborhood roadway and their visitors." *Berthier*, 2022 V.I. LEXIS 60, at *20-21 (citing *Davis*, 69 V.I. at 637). In other words, the Superior Court concluded that the People were required to prove that the "road is used by the public in general rather than only the residences next to the area" to establish its "burden of proving the incident occurred in a 'public place,' beyond a reasonable doubt." *Id.* at *22.

¶11     We agree that the People failed to establish the public place element under this statute. As we previously explained:

> On many occasions we have found that reckless endangerment occurred in a public place where the conduct at issue occurred on a public road. It does not follow, however, that all residential streets will be "in point of fact public." Residential streets may also exist within private communities—places to which the general public may not have a right to resort or which are not, "in point of fact public." The question of whether a specific area constitutes a "public place" under section 625 necessarily turns on the facts of each case.

*Wallace v. People*, 71 V.I. 703, 721 (V.I. 2019) (internal citations omitted). Because the question whether a place or, as in this case, a road is public for purposes of Section 625 turns on the facts of each case, this Court has never adopted the *per se* rule that a private road can never meet the definition of a public place. Rather, to determine whether a road that is private nevertheless constitutes a public place under Section 625, we employ the same test that applies to other "ostensibly private areas" and will consider whether the road is "actually accessible to the public" or is "so close to areas that are used by the public that the defendant's conduct could cause a grave risk of death to those in the public area." *Powell v. People*, 70 V.I. 745, 754 (V.I. 2019). For example, this Court applied this standard in holding that a staff-only area of a government office where a shooting occurred nevertheless constituted a "public place" for purposes of the reckless endangerment statute because the staff-only area bordered an area accessible to the public "'where a discharged gun could easily result in injury to innocent

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Opinion of the Court
Page 8 of 9

2024 V.I. 32

people who regularly pass close by.'" *Id.* (quoting *Davis*, 69 V.I. at 637).

¶12     Yet, as with other elements of a crime, the People bear the burden to prove beyond a reasonable doubt that the public may lawfully access the private road or that the private road is sufficiently near an area used by the public. We agree with the Superior Court that the People failed to meet that burden. The Superior Court correctly recognized that the only evidence the People introduced at trial in any way probative of whether the Estate Frydenhoj road satisfies the public place element are photographs depicting an "unpaved and very narrow" road "with residences on both sides," as well as witness testimony describing it as a "neighborhood road" that "leads to the 'the gut' and to 'the bridge'" in one direction and "to the 'main road' and the Frydenhoj ballfield or ballpark" in the other. *Berthier*, 2022 V.I. LEXIS 60, at *21. This evidence, even when viewed in the light most favorable to the People, fails to establish that people other than residents of the neighborhood are authorized to use the road. Even if we were to assume that the "main road" to which the Estate Frydenhoj road connects is a public road, Virgin Islands law expressly allows for private roads to connect to public roads as of right without destroying their private nature. *See* 20 V.I.C. § 7. And, while the Estate Frydenhoj road may connect to the "main road" at one end and a "ballfield or ballpark" on the other end, this fact, standing alone, does not establish that Berthier discharged his rifle from a private location that was nevertheless "close to areas that are used by the public." *Powell*, 70 V.I. at 754. The evidence introduced at trial, even if viewed in the light most favorable to the People, established only that Berthier shot at Penn from the portion of the road that bordered private residences. Even if we were to assume that either the ballfield or "main road" is a place accessible to the public, the People produced no evidence to show how far the shooting occurred from either location, let alone any evidence to establish that discharging a rifle in that portion of the Estate Frydenhoj road could "easily result in injury to innocent people" at those public places. *Id.*

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Opinion of the Court
Page 9 of 9

2024 V.I. 32

Therefore, the Superior Court correctly held that the People failed to introduce sufficient evidence to establish the "public place" element.

## IV.  CONCLUSION

¶13    The People did not introduce sufficient evidence from which a rational jury could conclude that Berthier shot at Penn in a "public place." Consequently, the Superior Court committed no error when it granted Berthier's post-verdict motion for judgment of acquittal on the reckless endangerment charge. Accordingly, we affirm the July 26, 2022 order setting aside the reckless endangerment conviction.

**Dated this 18th day of November, 2024**

**BY THE COURT:**

**MARIA M. CABRET**
Associate Justice

**ATTEST:**
**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

By: _____
     **Deputy Clerk**

Date: _____11-18-2024_____

IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

November 18, 2024 03:28 PM
SCT-Crim-2022-0044
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

SWAN, Associate Justice, dissenting.

## I.   FACTS AND PROCEDURAL HISTORY

¶14   On the evening of October 16, 2019, at approximately 6:00 p.m., Renaldo Penn was driving to his residence in Estate Frydenhoj after work.  Penn's house is situated on a neighborhood road that leads in one direction to a ravine and bridge and in the other direction to a main road and Frydenhoj Ballpark.  Penn was within view of his house when he was impeded from traveling any further by a white vehicle with two male occupants.  The vehicle had stopped in the middle of the road, thereby blocking Penn's path, as the parked vehicles on the sides of the road prevented Penn from circumnavigating the stopped vehicle.  Penn attempted to signal to the other driver to move off the roadway to allow him to pass, but Penn was ignored by the occupants of the other vehicle.  When Penn exited his vehicle to ask the other driver to move, a young man outside the white vehicle, whom Penn later identified as Appellee Shekil Berthier, left the road, descended a flight of stairs into a nearby home, and immediately returned with a firearm, discharging a shot at Penn from approximately four or five feet away.  The shot missed Penn, who was then standing between his vehicle's open driver-side front door and the body of the vehicle.  After staring at Penn for a minute, saying nothing, Berthier turned and descended the stairs to the home from which he had emerged while the white vehicle quickly departed.  Penn then returned to his vehicle and proceeded to enter his driveway.  It was only after the incident that Penn's girlfriend, Sylvia Samuel, who had witnessed the incident from Penn's driveway, observed that a bullet had cracked the windshield of Penn's vehicle and left a hole in its frame.

¶15   Berthier was arrested and charged with four counts, including reckless endangerment.  A jury trial was held from March 7-10, 2022.  At trial, Berthier moved for judgment of acquittal on all four charges, including Count Three: Reckless Endangerment in the First Degree, in violation

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Dissenting Opinion
Page 2 of 8

2024 V.I. 32

of 14 V.I.C. § 625(a). The trial court reserved ruling on the motion for Count Three and later granted Berthier's motion for judgment of acquittal with regard to Count Three, finding that the People had failed to prove the element of Reckless Endangerment providing that the incident must have occurred in a "public place". The People appealed.[1]

## II.    JURISDICTION AND STANDARD OF REVIEW

¶16    This Court retains appellate subject matter jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law." Act to Revise the Organic Act of the Virgin Islands of the United States, Pub. L. 517, 68 Stat. 497, 497 (1954) (as amended) (48 U.S.C. § 1613a(d)). In accordance with the grant of such authority from Congress, the Virgin Islands Legislature established this Court and granted it jurisdiction over all appeals arising from a final order of the Superior Court. 4 V.I.C. § 32(a); *see* 4 V.I.C. § 33(a) ("Appealable judgments and orders ... shall be available only upon entry of final judgment in the Superior Court."). Within the territory, "title 4, section 33(d) of the Virgin Islands Code provides the people with the statutory authority to appeal certain criminal judgments." *People v. Pratt,* 50 V.I. 318, 321 (V.I. 2008). This authority extends to appeals from judgments of acquittal entered by a trial court after a jury has rendered a guilty verdict. *People v. Clarke,* 55 V.I. 473, 477 (V.I. 2011). The instant matter therefore falls within our jurisdiction.

¶17    This Court exercises plenary review over claims of sufficiency of the evidence, "interpret[ing] the evidence in the light most favorable to the People." *Viera v. People,* 71 V.I.

---

[1] The Superior Court also granted acquittal as to Counts Two and Four. The People's notice of appeal sought review of the Superior Court's ruling on Counts Two, Three, and Four, but, as the majority's opinion correctly notes, the People's brief fails to provide argumentation against the Superior Court's decision regarding Counts Two and Four, thus waiving the issue as to those counts. *See Dowdye v. People,* 55 V.I. 736, 750 (V.I. 2011).

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Dissenting Opinion
Page 3 of 8

2024 V.I. 32

669, 679 (V.I. 2019) (citing *Simmonds v. People,* 59 V.I. 480, 485-86 (V.I. 2013)). We apply to a

jury's verdict a "particularly deferential standard of review." *James v. People,* 60 V.I. 311, 317

(V.I. 2013). We must affirm a jury verdict provided that considerable evidence was presented at

trial such as would allow a rational trier of fact, under a "beyond a reasonable doubt" standard,

and viewing the evidence in the light most favorable to the People, to convict. *Fahie v. People,*

62 V.I. 625, 630 (V.I. 2015).

## III. DISCUSSION

¶18     Subsection a of section 625 of title 14 of the Virgin Islands Code provides that a person

> is guilty of reckless endangerment in the first degree when, under the circumstances
> evidencing a depraved indifference to human life, he recklessly engages in conduct
> in a public place which creates a grave risk of death to another person.

Subsection c(2) provides the following definition of "public place" as it is to be understood within

the section:

> [P]ublic place means a place to which the general public has a right to resort; but a
> place which is in point of fact public rather than private, and visited by many
> persons and usually accessible to the public.

This Court has analyzed this definition of "public place" in previous matters. We declared in

*Tyson v. People* that, in plain terms, the "public place" portion of section 625 "requires only a

showing that the conduct was done in *a place that is open to the public or where the public has a*

*right to be*, thereby posing a risk of death to members of the public who may be in the area." *Tyson*

*v. People,* 59 V.I. 391, 417-18 (V.I. 2013) (emphasis added); *see also Augustine v. People,* 55 V.I.

678, 690 (V.I. 2011). In *Powell v. People,* we recognized that a public place "may include

ostensibly private areas that are nevertheless actually accessible to the public, or which are so close

to areas that are used by the public that the defendant's conduct could cause a grave risk of death

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Dissenting Opinion
Page 4 of 8

2024 V.I. 32

to those in the public area." 70 V.I. 745, 754 (V.I. 2019) (citing *M. Davis v. People*, 69 V.I. 619, 636-37 (V.I. 2018)).

¶19    Despite previous analysis, however, the language of section 625's definition of "public place" merits further examination in the instant matter. It is a simple enough definition, one which may be broken down into four separate components:

1. A place to which the general public has a right to resort;

2. A place which is in point of fact public rather than private;

3. [A place] visited by many persons; and

4. [A place] usually accessible to the public.

The first and the fourth components may be easily consolidated as concerning whether the general public has both a right and access to the place in question. Here, it is obvious that the public has both a right and access to the road on which the crimes occurred. The people presented evidence that the road where the incident occurred was not a dead-end road but rather a "thru" road, leading to "'the bridge'" on one side and to "'the main road'" on the other. The road *passes through* a residential neighborhood and is bordered by private properties, yet everyone has the right to utilize the road, either to conduct business or social engagements with a resident of the area, to access the adjacent public Frydenhoj Ballpark, or to pass through on the way to another part of the island. A public thoroughfare, absent any physical or legal impediment at either end of it declaring it a "private" or "limited use" road, is inherently both accessible and free for public use. *See Phillip v. People*, 58 V.I. 569, 591 (V.I. 2013) (holding that a shooting on a road in a residential area, near a public basketball court, occurred in a public place); *see also Tyson*, 59 V.I. at 417 (declaring that a shooting from a vehicle on a road adjacent to a public graveyard occurred in a public place).

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Dissenting Opinion
Page 5 of 8

2024 V.I. 32

¶20    The trial court contradicted itself in attempting to interpret section 625's definition of "public place" when it stated that "*a public place requires general access to the public*, rather than merely to residences nearby, so *although the public can access the Estate Frydenhoj roadway*, it is a residential area utilized by those who live along that neighborhood roadway and their visitors." (emphasis added.)  The court stated that a public place requires general public access, then stated that the general public can, in fact, access the roadway in question.  Yet the court appears to have found that, because the roadway was in a residential area and was therefore *more likely* to be used by residents than by nonresidents, it somehow was *not* public.  The trial court further found that the evidence presented by the People to the jury "was not sufficient for a rational jury to draw a conclusion that the road is used by the public in general rather than only the residences next to the area," and therefore that the People "failed to carry the burden of proving the incident occurred in a "public place."  However, these statements reflect a flagrantly incorrect understanding of the statute.

¶21    Simply because a roadway, an amenity, a business, etc., is most frequently or commonly used by those living in proximity does not make the roadway, amenity, or business any less available to the public at large.  For example, while public dumpsters found on the side of the road throughout the territory are accessible to the public at large to utilize, each dumpster is likely primarily used either by those living closest to it, or by those for whom it is conveniently located along their daily commuting route.  This fact does not make each dumpster any less accessible to any other member of the public who may desire to use it, however.  Likewise, roads within residential areas are doubtless more likely to be used by the residents of those particular areas than by the public at large.  Yet, this sole fact does not make those roads any less accessible to other

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Dissenting Opinion
Page 6 of 8

2024 V.I. 32

members of the public who desire or wish to utilize them. *See Powell*, 70 V.I. at 754 ("A [public place] may include ostensibly private areas that are nevertheless actually accessible to the public."). Here, the People proved that the public at large has both access to, and the right to use, the road on which the crimes occurred. Whether that right is frequently or widely exercised is irrelevant on these issues.

¶22    The second portion of the definition of "public place" in 14 V.I.C. § 625 identifies a public place as "a place which is in point of fact public rather than private." The focus of this phrase is to exclude from the definition of "public place" all places that are, instead, private. To determine whether the roadway at Estate Frydenhoj could possibly be identified as "private," and therefore be excluded from identification as a public space, we must define "private." According to Black's Law Dictionary, "private" is defined as "[r]elating or belonging to an individual, as opposed to the public or the government." BLACK'S LAW DICTIONARY 1315 (9th ed. 2009). This definition is both commonsensical and defined by exclusivity: privacy implies the exclusion of some or all of the public from access or right to a thing, place, etc. Once again, in the instant matter, there is no exclusion whatsoever. The People sufficiently proved that *anyone* who wishes to utilize the roadway in issue has the right and accessibility to traverse it. No evidence was provided to the court suggesting any impediment or obstruction to the flow of public access on the road: no sign stating "private," or "no trespassing" or, even more clearly, "no public access"; no gate or other barrier limiting access; and no obstacle or obstruction that would allow residents, but not nonresidents, of the neighborhood to use the roadway. Accordingly, the unavoidable conclusion is that the roadway is *not* private, and if it is not private, then it must be, by process of elimination, public.

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Dissenting Opinion
Page 7 of 8

2024 V.I. 32

¶23    The third portion of section 625's definition of "public place," and the last one remaining to be analyzed, defines a public place as a place "visited by many persons." This phrase is easy to apply to places like parks, restaurants, museums, and the like, but it does not naturally describe the public's relationship with roadways. Grammatically speaking, one does not "visit" a roadway; rather, one "uses" it, "drives on" it, "traverses" it, etc. Therefore, we must substitute these more accurate terms for that used in the definition. Can it thus be determined that the People provided enough evidence to find that the Estate Frydenhoj roadway is "used by many persons" within the intendment of the third component of the definition set out in 14 V.I.C. § 625? I assert that the many photos of the roadway provided by the People reveal sufficient evidence that the roadway has many users. Even if, as the trial court found, the roadway were primarily used only by residents of the immediate area, the photos of the scene disclose just how "many persons" are, in fact, residents of the immediate area. The photos reveal both sides of the roadway glutted with parked vehicles. It appears evident that the parking availability along the roadway can barely provide for those who use it. Aside from the many vehicles, the road is lined with multi-story dwellings, the residents of which no doubt own many of the aforementioned vehicles. In short, the roadway clearly passes through a *densely populated* residential area. Even were it not accessible to the public, the nearby residents alone would surely constitute "many persons." for purposes of the definition set out in 14 V.I.C. § 625. *See Burke v. People* , 60 V.I. 257, 263 (V.I. 2013) (stating that a shooting from the courtyard of a multi-unit residential building toward a balcony of the same residential building occurred in a public place); *see also Cascen v. People,* 60 V.I. 392, 408-09 (V.I. 2014) (holding that a shooting into a crowd outside of a public housing community took place in a public place). All those nonresidents who use the road on visits, business, or simply to pass

*People v. Berthier*
S. Ct. Crim. No. 2022-0044
Dissenting Opinion
Page 8 of 8

2024 V.I. 32

through only add to that already-substantial number of users. Thus, it appears perfectly reasonable to find that the People sufficiently established this portion of the definition of "public place."

¶24    Accordingly, I conclude that the People provided sufficient evidence that the location of the shooting incident substantiated each of the elements of the definition of "public place" as defined in section 625 of title 14 of the Virgin Islands Code, such that a rational jury could have found the location to be a "public place" for purposes of the "reckless endangerment" statute. I would therefore reverse the trial court's July 26, 2022 order setting aside Appellee Shekil Berthier's reckless endangerment conviction.

Dated this _18_ day of November 2024.

_____
**IVE ARLINGTON SWAN**
**Associate Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

By: _____

Dated: 11-18-2024